(COMMON LAW.)

## M'COUL v. LEKAMP's Administratrix.

A. L. brought an action of assumpsit in the circuit court, and after issue joined, the plaintiff died, and the suit was revived by *scire facias* in the name of his administratrix. While the suit was still depending, the administratrix intermarried with F. A., which marriage was pleaded *puis darrein continuance.* Held that the *scire facias* was thereupon abated, and a new *scire facias* might be issued to revive the original suit in the name of F. A. and wife, as the personal representative of A. L., in order to enable her to prosecute the suit until a final judgment under the judiciary act of 1789, ch. 20. sec. 31. Where a witness, a clerk to the plaintiff, swore that the several articles of merchandize contained in the account annexed to his deposition, were sold to the defendant by the plaintiff, and were charged in the plaintiff's day-book by the deponent and another person who is dead, and that the deponent delivered, and further swore, that he had referred to the original entries in the day-book; held, that this was sufficient evidence to prove the sale and delivery of the goods.

ERROR to the circuit court for the district of Virginia.

This cause was argued by Mr. *Lee,* for the plaintiff in error, and by Mr. *Swann,* for the defendant in error.

Feb. 12th.

Mr. Chief Justice MARSHALL delivered the opinion of the court.

Albert Lekamp brought this suit in the circuit court, for the district of Virginia, for the recovery of money claimed to be due to him from Neil M'Coul, the defendant below. After issue joined the plaintiff died, and the suit was revived in the name of his administratrix. While the suit was still depending, the administratrix intermarried with Frederick L. E. Amelung, which marriage was pleaded *puis darrein continuance.* The *scire facias* was thereupon abated and a new *scire facias* issued to revive the original action in the names of Amelung and wife, as the personal representatives of Albert Lekamp.

At a subsequent term the cause was tried on the original issue, and a verdict found for the plaintiff, on which the defendant prayed that the judgment might be arrested for the following reasons: " Because he saith, that after the plea pleaded the original plaintiff, Albert Lekamp, departed this life, and Sophia Lekamp, his administratrix, sued forth a *scire facias* to revive the suit on the 4th of July, 1811, that while the suit stood revived in her name as administratrix, the said Sophia Lekamp intermarried with Frederick L. E. Amelung, and on the 4th of December, 1812, this defendant having pleaded the intermarriage aforesaid, it was ordered that the *scire facias* be abated, whereupon the said Frederick L. E. Amelung and Sophia, his wife, as administratrix aforesaid, sued out a new *scire facias* to revive the suit, and there being no new plea pleaded or any consent that the cause should be revived in any

other manner than the law would direct, the jury was empanneled, and a verdict found as aforesaid; and the said defendant saith, that the act of Congress, in that case made and provided, doth not warrant the revival of the suit in the name of the said Amelung and wife, under the circumstances aforesaid."

These errors were overruled, and a judgment rendered conforming to the verdict of the jury.

At the trial of this cause, the plaintiff offered in evidence the deposition of Zachariah Roberts, with the accounts thereunto annexed. The deponent states, that he was clerk of Albert Lekamp, from the 10th day of January, 1804, to the 9th day of June, 1809. That the account B., annexed to his deposition, is a just and true account current taken from the books. That on the 8th day of November, 1805, Neil M'Coul paid up the balance for goods purchased previous to the 26th of April, 1805, with the interest due thereon as stated. He then recapitulates in his deposition the several items on the debit side of the account current, which is composed of the sums total of goods delivered on particular days, and "states most positively that the said items are taken from the account current of the said Neil M'Coul on the said Lekamp's books, which books he kept, and has had reference thereto. That viewing and referring to the other paper writing annexed, marked, also, with the letter B., beginning with the words, ‘a statement of merchandise sold and delivered to Neil M'Coul,’ he saith that the several articles of merchandise therein enumerated, specified, described, and at large set forth and

charged, and contained also in the before-mentioned account current, marked B., were sold by said Albert Lekamp, in his life time, and at the respective times at which they are charged to the defendant, Neil M'Coul, and *were charged in the day-book* of the said Albert Lekamp, by the deponent and Mr. Vithake, who is now deceased, and *the deponent delivered* them," &c. The deposition then proceeds to state that the prices are correctly stated; that all due credits, so far as he knows, are given; and that the balance is truly struck: And adds, that the deponent, before giving in his deposition, had reference to the original entries on the day-books of Lekamp, which entries were made by Mr. Vithake himself.

The first account, marked B., is, as is stated in the deposition, the account current. The second account, also marked B., is a particular and detailed enumeration of the articles sold and delivered, with their prices, and agrees in amount with the account current.

The counsel for the defendant moved the court, not to allow the said accounts to go in evidence to the jury, as not being copies of the original entries in the day-books or original books of the plaintiff's intestate; but the court was of opinion, that the account B., beginning with the words " statement," &c., was substantially stated by the witness to be a copy from the day-books, or original books of entries, and that the same was sufficiently proved to go in evidence to the jury, together with the said deposition. The defendants excepted to this opinion.

Two errors are assigned in the proceedings of the court below :

1st. In reviving this suit after the abatement of the first *scire facias*, which error ought to have arrested the judgment.

2d. In permitting the account, marked B., to go in evidence to the jury

The first error assigned is of some consequence, as the decision upon it furnishes a rule of practice for all the circuit courts of the United States.

The argument for the plaintiff in error is briefly this · At common law all suits abate by the death or marriage of the plaintiff, if a *feme sole ;* and such suit could not be prosecuted in the name of the representative, or of the husband and wife, unless enabled so to do by statute. The act of congress provides for the case of death, but not for the case of marriage. Consequently, the suit of a *feme sole* who marries abates as at common law.

This argument, if applied to an original suit, instituted by a *feme sole*, would certainly be conclusive : but this suit was not instituted by a *feme sole*. It was instituted by Albert Lekamp, who died while it was depending. The law says, " That where any suit shall be depending in any court of the United States, and either of the parties shall die before final judgment, the executor or administrator of such deceased party, who was plaintiff, petitioner, or defendant, in case the cause of action doth, by law, survive, shall have full power to prosecute or defend any such suit or action until final judgment."

When, therefore, Albert Lekamp died, his admin-

istratrix, since the cause of action survived, had full power given her by the statute to prosecute this suit until final judgment. The suit did not abate, but continued on the docket as the suit of Albert Lekamp. It did not become the suit of the administratrix, but remained the suit of the intestate, to be prosecuted by his representative. The marriage of this representative would abate her own suit, but could not abate the suit of her intestate. That still remained on the docket, to be prosecuted by her, according to the letter of the law, as well as its spirit, "until final judgment." If her marriage abated her *scire facias,* and the original suit still remained on the docket, was still depending, then its state was the same as if a *scire facias* had never issued; in which case all will admit a *scire facias* ought to issue in the name of husband and wife.

This court is unanimously of opinion, that as the original suit did not abate, the *scire facias* in the name of the administratrix, while a *feme sole,* constituted no bar to a *scire facias* in the name of the husband and wife after her marriage, to enable her still " to prosecute that suit until a final judgment."

The question which grows out of the bill of exceptions is entirely a question of construction. All admit, that in this action the delivery of the goods sold must be proved, and that the entries to which the witness may refer must be the original entries made in the day book. The doubt is, whether, upon right construction, the deposition of Zachariah Roberts amounts to this. He says, that the several articles of merchandise contained in the ac-

count annexed to his deposition, were sold to the defendant by Albert Lekamp, and were charged in the *day-book* by the deponent and another person who is dead, and that the deponent delivered them. He further swears that he had referred to the original entries in the day-book. He could not swear more positively to the delivery of the goods than he does; but as it is clear that he could not, even for a week, recollect each article which is enumerated, he accounts for his recollection by saying that they were entered in the day-book partly by himself, and partly by another clerk who is dead, and that he has referred to this day-book. This is an account taken from the original entries made at the time of delivery, and is, therefore, admissible. The account current, though agreeing with the account taken from the day-book, appears not to have gone to the jury.

1817.

M'Coul
v.
Lekamp.

Judgment affirmed.[a]

a Whatever might have been the doctrine of the civil, or Roman law, on this subject, it is certain that by the codes of the nations of the European continent, which are founded on that law, the books of merchants and traders are, under certain regulations, evidence against those with whom they deal. Thus, by the law of France, the books of traders, regularly kept, may be admitted as evidence, in commercial matters, between persons engaged in trade. *Code de Commerce, Liv. 1. Tit. 2. Des Livres de Commerce, Art.* 12. So, also, the books of tradesmen make a *semi-proof* against all persons dealing with them, the oath of the party being added to this imperfect evidence afforded by the books. To which *Pothier* adds, that the tradesman must enjoy the reputation of probity; that the books must be regularly kept; that the action must be commenced within a year from the time the articles are delivered; that the amount be not too great; and that there is

1817.

M'Coul
v.
Lekamp.

nothing improbable in the demand arising from the circumstances and wants of the debtor. *Des Obligations, Nos.* 719. 721.

By the common law of England, books of account, or shop books, are not allowed, of themselves, to be given in evidence for the owner; but a clerk, or servant, who made the original entries, may have recourse to them to refresh his memory, as to other written memoranda, made at the time of the transaction. So if the clerk or servant who made the entries be dead, the books may be admitted in evidence, to show the delivery of the articles, on producing proof of his hand-writing. *Bull. N. P.* 282. Price v. Torrington. 1 *Salk.* 285. S. C. 2 *Ld. Raym.* 873. Pitman v. Madox. 2 Salk. 690. But if the clerk be living, though absent without the jurisdiction of the court, the entries are inadmissible. Cooper v. Marsaen. 1 *Esp. N. P. C.* 1.

In most of the United States the English law on this subject is adhered to as the rule of practice. But in others it has been changed either by usage and decisions of the courts founded thereon, or by positive statutes.

Thus it has been held, by the supreme court of New-York, (Mr. Justice PLATT dissenting,) that where there are regular dealings between the plaintiff and defendant, and it is proved that the plaintiff keeps fair and honest books of account; that some of the articles charged to the defendant have been delivered to him; and, that the plaintiff keeps no clerk, his books of account are, under these restrictions, and from the necessity of the case, admissible evidence for the consideration of the jury. Vosburgh v. Thayer, 12 *Johns. Rep.* 461.

In Pennsylvania, and in the eastern states generally, the plaintiff's books of account, together with his suppletory oath proving the original entries, and the sale and delivery of the articles are evidence to prove such sale and delivery. Poulteney *et al.* v. Ross. 1 *Dall.* 238. Steritt v. Bull. 1 *Binney,* 234. Cogswell v. Dolliver. 2 *Mass. Rep.* 217. Prime v. Smith. 4 *Mass. Rep.* 455.