## ROBERT LEIGHTON *et al. vs.* NICHOLAS W. MANSON.

Where account-books, kept in the handwriting of one of several partners, *with his supplementary oath,* would have been evidence for the plaintiffs, had he been alive; the same *books* are competent evidence after his death.

Although it is difficult to fix on any definite and clear rule of general application, to determine how large the quantity of articles delivered at one time must be, from whence the presumption arises, that there exists better proof, in order to exclude the books of the party; the best rule seems to be, for the Judge to decide upon inspection of the items of the account, whether the articles charged could ordinarily have been delivered without the assistance of other persons, and admit or reject the testimony, as he may conclude the articles could, or could not, have been so delivered.

Where the only items in the account were 355 pounds of beef and 360 pounds of beef, bearing the same date, and standing together without any other charges intervening; *it was held,* that the books were not competent evidence of the delivery of the beef.

Where a nonsuit has been once properly ordered by a Judge of the Court; whether the nonsuit shall, or shall not, be taken off *by him on motion* of the plaintiff, because he had discovered new evidence, unknown when the nonsuit was ordered, is an *exercise of discretion,* and not subject to the revision of the whole Court *by way of exceptions* to the refusal of the Judge.

ASSUMPSIT on an account annexed to the writ, a copy of which follows : —

" *Nicholas W. Manson*

" to *Robert Leighton, 3d,* and *Joshua Gowen, jr.*   Dr.

" 1831, *Dec.* 20, To 355lb. beef, at $4½ pr. cwt.      $15,97
    ”       ”      ”    360    ”       4½       ”          16,20

                                                        _____

                                                         $32,17

The plaintiffs were surviving partners of one *Prince.* The co-partnership of the plaintiffs and *Prince* was admitted, and the death of *Prince,* before the commencement of the suit, was proved. To prove the items in the account, the plaintiffs offered in evidence a book of original entries in the handwriting of *Prince. Emery J.,*

before whom was the trial, refused to admit the evidence on the ground, that the articles were of a bulky nature, and the delivery of them might and should be proved by other testimony. The plaintiffs thereupon became nonsuit with leave to set it aside, if the ruling of the Judge was incorrect.

At a subsequent day, in the same term, the plaintiffs moved to set aside the nonsuit, because they had discovered evidence of the delivery of the articles to the defendant by *Prince,* which was not known to them at the time the nonsuit was directed. But the defendant not consenting, that the nonsuit should be removed, *Emery J.* refused to set it aside. If the ruling and decision of the Judge was erroneous, the nonsuit was to be set aside.

*Codman,* for the plaintiffs, contended, that the evidence offered was legally admissible, and cited 3 *Dane, c.* 81, *art.* 1, § 4; *ibid, c.* 81, *art.* 4, § 1; *Cogswell* v. *Dolliver,* 2 *Mass. R.* 217; *Shillaber* v. *Bingham,* 3 *Dane,* 321. No presumption can arise in this case from the dealings, that the plaintiffs kept clerks, who could testify. *M'Coul* v. *LeKamp,* 2 *Wheat.* 111; *McLellan* v. *Crofton,* 6 *Greenl.* 307. Where the party has deceased, the books are evidence, as they would be with the oath of the party making the entry, were he alive. 1 *Salkeld,* 285. The nonsuit should have been removed. It is like granting a new trial on petition. The refusal to take off a nonsuit is not an act of discretion, but a ruling in matter of law. *Purple* v. *Clark,* 5 *Pick.* 206.

The discovery of new testimony is a sufficient cause for taking off a nonsuit or granting a new trial. *Clapp* v. *Balch,* 3 *Greenl.* 216; *Frothingham* v. *Dutton,* 2 *Greenl.* 255.

*W. Goodenow,* for the defendant, contended, that the book was not in any case evidence, without the oath of the person making the entry in support of it. *The death of such person is no exception.* *Frye* v. *Barker,* 2 *Pick.* 65.

But the books could not be admitted in evidence, if *Prince* was alive and ready to make oath to them. Both items are of the same date, and are to be considered, as delivered at the same time. The articles are of a character to show, that other persons were present at the time. There is the same law, and as much reason, for charging the cow, when alive, as the whole carcase, when killed.

*Dunn* v. *Whitney*, 1 *Fairf.* 9; *McLellan* v. *Crofton*, 6 *Greenl.* 307.

The taking off a nonsuit, or refusing it, is merely an act of discretion, and not subject to exceptions. But if exceptions would lie, no new trial ought to be granted for the cause set forth in the report. *Bond* v. *Cutler*, 7 *Mass. R.* 205.

After a continuance, the opinion of the Court was drawn up by

SHEPLEY J. — The plaintiffs at the trial, proposed to introduce their books to prove the sale and delivery of three hundred and fifty-five pounds of beef, in one item, and three hundred and sixty pounds of beef in another item, after proving that the original entries were made in the handwriting of a deceased partner.

The judge who presided at the trial, refused to permit the books, under these circumstances, to go to the jury, on the ground that the delivery of these articles should have been proved by other testimony. In the argument, two objections were taken to the admissibility of the books.

First, That the books could only be admitted when accompanied by the oath of the person making the entries; and that could not be had in this case, the person not being alive.

Secondly, That the articles themselves were of too bulky a nature to permit the delivery to be thus proved, because from the nature of the transactions there must be other and better proof of the delivery.

In the earliest reported cases, the books seem to have been admitted only "as a foundation for the suppletory evidence of the oath of the party." 2 *Mass. R.* 217, *Cogswell v. Dolliver.*

It soon became evident, that there would be much difficulty in collecting the debts due to mechanics and traders after their decease, unless the books were regarded as competent testimony, after proof that the original entries were made in the handwriting of the person purporting to deliver the articles, or perform the services, and that such person had deceased.

In the case of *Prince, administratrix,* v. *Smith,* 4 *Mass. R.* 455, a paper, containing items of account, and alleged to have been transcribed from the books of the intestate, was offered and rejected on the ground, that there was no evidence, that it had been truly

transcribed from the books; the books themselves having been destroyed. *Sewall J.*, in delivering the opinion of the Court, says, "if the proof in this case had extended to shew, that the items of this account had actually existed in the intestate's shop-book, where his daily transactions were minuted, and that the transcript offered, had been truly taken therefrom, I should have no doubt of the admissibility of a transcript thus compared and proved, upon the ground of necessity; and that it was the best evidence which the case admitted, under all the circumstances." It cannot be doubted, that the books themselves, upon these principles, would have been admitted, after proof of the original entries, in the handwriting of the deceased, if they had been in existence.

In *England*, where the books of the party are not generally admitted as evidence, they have been from necessity admitted, when the person delivering the articles and making the entries in the books had deceased. 2 *Ld. Raym.* 873, *Price* v. *Torrington.* Proof of no higher character was regarded as competent in the case in 2 *Wheat.* 111, *M'Coul* v. *LeKamp.* Books were admitted as competent testimony when the original entries were made in the handwriting of a deceased clerk. 3 *Pick.* 96, *the Union Bank* v. *Knapp.* The party's own books, the original entries being in his own handwriting, were admitted after his decease as proof, in 6 *Greenl.* 307, *McLellan* v. *Crofton.*

If the books were without other objection, than that they could not be accompanied by the oath of the party making the entries, there would be no valid objection to them, as testimony in the cause. The second objection presents more difficulties.

Speaking of the admission of the party's books, accompanied by his own oath, *Sewall J.*, in *Prince* v. *Smith*, says: "It is a practice which has been long established, and seems to have arisen upon the most reasonable grounds, out of the necessity of the case, and a conformity to the actual state of things."

In the case of *Shillaber* v. *Bingham*, 3 *Dane's Abr.* 321, the Court held, that no distinction in regard to quantities had been made in the proof of the delivery of articles of merchandize, by the books and suppletory oath of the party.

In the case of *Dunn* v. *Whitney*, 1 *Fairf.* 9, that case was commented upon, and a doubt was expressed whether it could now be

regarded as affording a safe rule, and the reasons were stated for entertaining such doubts.

And in that case, it is said, such evidence " is never to be received in support of such demands, as in their nature afford a presumption, that better evidence existed." And it is also said, " if sold and delivered in large quantities, the presumption is, that persons other than the party making the sale, would be likely to have knowledge of it, and therefore the books of the seller are inadmissible."

The question remains undecided, how large must the quantities be, before the presumption arises of better proof, so as to exclude the books and oath of the party? It may be very difficult to fix upon any rule so definite and clear, as to be of easy application in the administration of justice.

The books of a party have been, it is believed, more extensively received as evidence, than has been at times supposed. The practice has not been confined to *New England.* They have been received, with certain restrictions, as testimony in the State of *New York.* 12 *Johns. R.* 461, *Vosburgh* v. *Thayer.* So are they received in the State of *Pennsylvania.* 1 *Dallas,* 238, *Poulteney* v. *Ross.*

And in a note to *M'Coul* v. *LeKamp,* 2 *Wheat.* 118, it is said to be certain, that the books of merchants, traders, and mechanics, are admitted by the codes of the European continent, founded upon the civil law, " the oath of the party being added to this imperfect evidence afforded by the books."

While the necessities of business have, in modern times, since books have become more extensively the evidence of dealings, induced the Courts to admit the books of the party, it is very desirable, that no limitation should be placed upon their competency as testimony, which will embarrass men in their daily business. On the other hand, the Courts have always perceived, that there were " obvious difficulties and hazards, attending this mode of proof; and that it ought not to be extended by any new precedents."

And in the case of *Dunn* v. *Whitney,* it was said, " the situation and circumstances of trade are gradually becoming such, as very much to diminish the reason of the relaxation of the common law rule; and as the reason for the exception ceases, Courts will rather

restrain, than enlarge the exception itself." The object to be attained, by the admission of the books with the party's oath, is to prove the service performed, or the articles delivered. The party must be able to state, that he actually delivered the articles, or was knowing to their delivery, as well as that he made the entries.

The necessity, then, for the oath of the party in aid of his books, seems to exist only where he delivered the articles himself. If the articles are of such bulk or weight, that the person making the entries could not reasonably be supposed to have delivered them without assistance, the presumption would arise, that better evidence of delivery might be produced; and the reason for admitting his own testimony would cease.

Perhaps no better rule for the guidance of judicial tribunals will be found, than for the Judge to decide upon inspection of the items of the account, whether the articles charged could ordinarily have been delivered without the assistance of other persons; and admit or reject the testimony according, as he may conclude, that the articles could or could not have been so delivered.

Acting upon this rule, the Court must conclude, that it could not ordinarily be expected, that one person should have delivered the articles charged in the account; and the ruling of the Judge must be regarded as correct.

On a subsequent day of the term, the plaintiffs moved to set aside the nonsuit, alleging that they had discovered evidence of the delivery of the articles, not known to them when the nonsuit was directed; but the Judge refused to set it aside.

If a nonsuit be ordered against the *legal rights* of the plaintiff, it forms a just cause of complaint, and a bill of exceptions may be taken to such direction. The nonsuit in this case is admitted to have been properly ordered; and the question, whether the action should be afterwards restored to the docket, and remain there, or be continued until the newly discovered evidence could be produced, addressed itself to the discretion of the Judge. It is not a matter of right. The party can have no strictly *legal right* to have an action once disposed of, restored for that cause, simply upon motion. This Court may exercise such a legal discretion upon a proper application for a *new trial*; but the party might as properly except to the refusal of the Judge to continue the action to the next term

to enable him to obtain his testimony, as to except to the refusal to restore it upon motion, after it had been properly disposed of. It has been decided, that the decision of a question submitted to the discretion of the Judge is not the proper subject for exceptions. 3 *Greenl.* 216, *Clapp* v. *Balch*. The nonsuit having been properly directed, and this Court having no legal power to control a Judge in the *exercise of a discretion* by law entrusted to him ; the nonsuit is confirmed.