BROWN v. FLETCHER et al.

(Circuit Court, E. D. Michigan, S. D. July 23, 1904.)

No. 3,715.

1. COURTS—UNITED STATES COURTS—PROCEDURE—ABATEMENT AND REVIVAL.
   Rev. St. § 955 [U. S. Comp. St. 1901, p. 697], providing for the revival of suits in the courts of the United States which have abated by the death of a party, applies only to actions at law; nor is there any provision in the equity rules or practice for the compulsory revival of a suit in a circuit court at the instance of defendant after the death of the complainant.

2. SAME—FAILURE TO REVIVE—RIGHT OF DEFENDANT TO DISMISSAL.
   Where, after the death of complainant in a suit in equity in a federal court, no steps are taken by his representatives within a reasonable time to revive the suit, the court may entertain a motion by defendant to dismiss for want of prosecution; and such motion will be granted without reference to any statute of limitations, when it would be inequitable to allow the defendant to be held in court without a hearing, as where the suit affects the title to property or the right to convey the same.

3. EQUITY—DISMISSAL OF SUIT—ABANDONMENT.
   Where the personal representative of a deceased complainant in a suit in a federal court of equity took no steps to revive the suit during more than 18 months, but meantime instituted and prosecuted proceedings in another jurisdiction, the purpose of which was to obtain the same relief sought in such suit, defendant is entitled to a dismissal of the suit on the ground of abandonment.

4. SAME—ELECTION OF REMEDIES.
   Such action also amounts to an election to pursue a different remedy, which entitles defendant to a dismissal.

5. ABATEMENT AND REVIVAL—RIGHT OF REVIVAL—ASSIGNEE.
   Where the cause of action involved in a suit in equity has passed by assignment or devise from the estate of the deceased complainant to another, the suit cannot be revived, but the assignee or devisee must proceed by original bill.

In Equity. On motion to dismiss bill.

The defendants move the dismissal of the bill of complaint in this cause for the following reasons: First. (a) Because the suit has been abandoned; (b) because of want of prosecution. Second. Because the cause of action stated in the bill of complaint has been transferred and assigned to Albert W. Brown, who is now sole owner of the claim. The facts upon which this motion is predicated are succinctly stated in the brief of counsel for defendants, and, as their truth was not questioned upon the argument of the motion, they are adopted as the basis of the conclusion here reached. In 1874, one Spalding, administrator of William White, filed his bill in the Supreme Judicial Court of Massachusetts against George N. Fletcher for a partnership accounting; Fletcher being served with process in Suffolk county, state of Massachusetts. Before Fletcher's death, Spalding, the complainant, died, and the complainant in this cause, Frances M. Brown, was appointed administratrix de bonis non of his estate, and the suit was continued in her name until after Fletcher's death. Proofs were taken in the case from time to time before a referee or arbitrator, to whom the case had been referred by rule entered in the cause, but no report had been made by the referee and no final hearing had been had up to the time Fletcher died, November 6, 1899. Fletcher, at the time of his death, was a citizen of Michigan. He died testate, appointing by his will his sons, Frank W. Fletcher and Allan M. Fletcher, his executors. His heirs and legatees were his three children, Frank W. Fletcher, Allan M. Fletcher, and Grace Fletcher, now Mrs.

King. February 4, 1901, Frances M. Brown, administratrix de bonis non, filed her bill in this court, setting up the proceedings in the Massachusetts court, and praying that the Michigan executors and heirs of Fletcher be compelled to appear in the Massachusetts suit, and abide its result; and, in case this court should decide that it could not enforce such action, that an accounting de novo be had here of the partnership affairs of Fletcher and White. A restraining order was entered, preventing the executors from closing the estate, which order is still of force. After the filing of this bill, as the Michigan executors and heirs of Fletcher had declined to appear in the Massachusetts suit, the complainant in that suit caused Frank B. Cotton to be appointed administrator of Fletcher in the state of Massachusetts, and the suit was revived against him, and attempted to be revived against the Michigan executors and heirs. December 3, 1902, Frances M. Brown, the complainant in the suit at bar, died. December 6, 1902, Albert W. Brown was appointed administrator de bonis non of the estate of White in her stead, and on March 3, 1904, in ancillary proceedings in Michigan, was appointed administrator de bonis non of the estate of White in this state. Subsequently, Albert W. Brown, in his own right, acquired the entire ownership of the claim against the estate of Fletcher in litigation in said Massachusetts suit, and, without waiting the determination of this court whether the executors and heirs could be compelled to appear in the Massachusetts suit, was substituted as plaintiff in the Massachusetts suit, and upon April 14, 1903, a decree was entered in his favor individually against Frank B. Cotton, administrator by the appointment of the Massachusetts court, for the sum of $394,372.87, with interest from February 3, 1903, and costs. The decree also charges that the Michigan executors are bound to pay such amount, and that the heirs are bound to pay so much of such amount as shall remain unsatisfied after the application of the proceeds of the estate of Fletcher has been made. During all of this time, nothing was done in the suit here, and after the death of Frances M. Brown, December 3, 1902, no steps were taken to revive the suit, no application has yet been made for that purpose, nor is any purpose or desire expressed or intimated to that end. On the contrary, Albert W. Brown, who now owns the claim, has obtained an order in the probate court for the county of Wayne, opening the commission for the hearing of claims against the estate of Fletcher, which order was obtained against the protest of the defendants in this cause. On the 16th day of January, 1904, Albert W. Brown filed his petition in the probate court of Wayne county, praying that a commission on claims be appointed to hear and pass upon the allowance of petitioner's claim against the estate of George N. Fletcher. His executors appeared, and opposed the application, upon the ground that the matter was in litigation in this court, and the petition was dismissed for that reason. Subsequently, on April 4, 1904, Brown presented another petition to the probate court, asking that the commission on claims be revived, and the probate court on the same day, without notice to the executors, entered an order reviving the commission. April 9, 1904, Brown filed his claim against the estate of Fletcher with the commissioners on claims; the claim filed consisting of the judgment rendered by the Massachusetts court. May 5, 1904, the executors applied to the probate court to set aside the order reviving the commission on claims, for the reason that the matter was pending in this court, but the application was denied. On June 3, 1904, the defendant in this cause filed a plea in abatement with the commissioners, setting up the fact that the claim presented by Brown before the commissioners was being litigated in this court, and asking that the proceedings before the commissioners abate. This plea was overruled. Since the filing of this motion to dismiss the bill, June 16, 1904, Brown not only has failed to make any application to revive this suit, but upon July 3, 1904, notified the attorneys for the defendants in writing that he intended to proceed with the hearing upon the merits of the claim before the commissioners on claims in the probate court for the county of Wayne against the estate of said Fletcher upon July 8, 1904.

Russel & Campbell and Ashley Pond (Henry M. Campbell, of counsel), for the motion.

John Miner, opposed.

SWAN, District Judge (after stating the facts). In opposition to this motion, it is contended by the counsel for the late complainant: (1) That the motion is irregular, and that the court could not make a regular order thereon. (2) That the motion should be denied, because it asks a peremptory order of dismissal, instead of an order nisi to revive within a limited or specified time, or that the bill be dismissed. (3) That the remedy provided in section 955 of the Revised Statutes [U. S. Comp. St. 1901, p. 697] is exclusive. (4) That the time has not expired within which it is the absolute right of a personal representative of the deceased complainant to revive this suit, and that nothing less than the lapse of the period fixed by the statute of limitations can be pleaded to a bill of revivor.

With reference to the contention that the only grounds upon which a bill can be dismissed for want of prosecution are those named in general equity rules 38, 52, and 66, and rule 2 of the equity rules of the Circuit Court, it is sufficient to say that neither of these have any application to the questions presented by this motion, nor is the position sustained by the authorities. By rule 90 of the general equity rules it is provided that:

"In all cases where the rules prescribed by this court or by the Circuit Court do not apply, the practice of the Circuit Court shall be regulated by the present practice of the High Court of Chancery in England, so far as the same may reasonably be applied consistently with the local circumstances and local convenience of the district where the court is held, not as positive rules, but as furnishing just analogies to regulate the practice."

In Thomson v. Wooster, 114 U. S. 112, 5 Sup. Ct. 788, 29 L. Ed. 105, Mr. Justice Bradley gives the history of the adoption of these rules, and emphasizes the limitations created by the words "the present practice of the High Court of Chancery"; thus deciding that the practice in matters not regulated by the equity rules is that which obtained in the High Court of Chancery of England in 1842. It is conceded that general equity rules 56 and 57 make no provision to compel the revival of a suit abated by the death of a sole complainant. They prescribe simply the method and procedure by which a personal representative, at his own instance, may be substituted for a deceased complainant. It is claimed, however, that the omission in the general equity rules to provide for a compulsory revival by the complainant upon the application of a defendant was not an oversight, and that Congress had already legislated on the subject, making full provision by Rev. St. U. S. § 955 [U. S. Comp. St. 1901, p. 697], for such a case "in any suit in any court in the United States." Clarke v. Mathewson, 12 Pet. 164, 9 L. Ed. 1041, is cited as an instance of the application of the section, but this question was not raised in that case. This argument assumes that section 955 includes not only cases at law but cases in equity; but this assumption is negatived by the case of In re Connaway, Receiver, v. Moscow Nat. Bank, 178 U. S. 421–433, 20 Sup. Ct. 951, 44 L. Ed. 1134, where the court quotes with approval from the case of Lewis v. Outlaw, 1 Tenn. (1 Overt.) 140, as follows:

" 'Agreeably to the practice of the courts of law in England, all suits abated by the death of either party; nor could they be revived by scire facias.' The court then proceeds to say that the practice in chancery in

England was, upon the death of either plaintiff or defendant, to file a bill of revivor against the representative of the deceased; and, applying this practice to Kentucky, under a statute which provided no abatement should occur by the death of either plaintiff or defendant, but might be 'proceeded upon by the heirs, executors, administrators, or assigns of either party,' it seems clear that all revivors, to comport with the principles of reason and the English practice, should be made by causing appropriate process to issue, so as to make the representatives of the deceased parties in a legal manner. To revive a dormant judgment, a scire facias is necessary. To revive in chancery, the authorities show that a bill must be filed, and process issued thereon, to which the representatives may make such answer as the nature of the case may require."

The language of the opinion of the Supreme Court, and its statement on page 435 of 178 U. S., page 956 of 20 Sup. Ct. [44 L. Ed. 1134], of the purpose of section 31 of the Judiciary Act of 1789, of which sections 955 and 956, Rev. St. [U. S. Comp. St. 1901, p. 697], are reproductions, point to the conclusion that section 955 is limited to actions at law in contradistinction from suits in equity. The court says:

"The enactment of the section was to provide against the abatement of actions which would otherwise abate at common law, and we cannot confine its remedy to cases where death occurs after judgment; in other words, confine its remedy to the cases where the common law already afforded a remedy. See, also, McCoul v. Lekamp, 2 Wheat. 111, 4 L. Ed. 197, and Hyde v. Leavitt, 2 Tyler, 170."

This was the intimation, also, of Judge McDowell in Dillard, Adm'r, v. Central Virginia Iron Co. (C. C.) 125 Fed. 157–159. This construction of the section is also required, as it would seem, from its language. Its terminology is that of the common law. In Foster's Federal Practice (section 179, p. 398) the author says:

"The only methods of reviving a suit in equity in the federal courts seem to be a bill of revivor, a bill in the nature of a bill of revivor, a bill of revivor and supplement, and a supplemental bill in the nature of a bill of revivor."

To the same effect is 2 Bates, Fed. Eq. Prac. p. 634 et seq.

In Kennedy v. The Georgia Bank, 8 How. 610, 12 L. Ed. 1209, the court say:

"When, in the progress of a suit in equity, the proceedings are suspended for the want of proper parties, it is necessary to file a bill of revivor."

It would seem, therefore, from these authorities and the invariable practice in the High Court of Chancery that section 955 of the United States Revised Statutes [U. S. Comp. St. 1901, p. 697] has no application to suits in equity. The rule, irrespective of any statute, is that where a sole plaintiff dies before decree the suit cannot be revived at the instance of a defendant or his legal representative. 3 Daniell's Ch. Pl. & Pr. p. 1539; Bensen v. Wolverton, 16 N. J. Eq. 110. If this be true (and it is properly conceded that no provision is made by the general equity rules for compelling the appearance of the personal representative of a deceased sole complainant, and the revival and prosecution of the suit) defendants would in this suit, unless they may have a dismissal of the bill for want of prosecution, be left at the mercy of the deceased complainant's representative, and might be compelled to await the lapse of the period of limitation before settlement and distribution of the testator's

estate could be had. The safe alienation of any part of it meanwhile would be prevented, the incumbrances thereon would accumulate, and no sale could be had of unprofitable property, the retention of which would impair the estate, while they were thus utterly helpless to bring to decision the matter waged against them by the bill. The hardship of such consequences has been recognized. In the case of Picquet v. Swan, 5 Mason, 561, Fed. Cas. No. 11,135, where Mr. Justice Story says:

"The general practice is perfectly well settled that the defendant may have the bill of complaint dismissed for want of prosecution if the plaintiff does not proceed within a reasonable time. * * * The present is a case where codefendants having answered insist upon the right to dismiss the bill on account of the nonprosecution of the same against Swan. It would be an intolerable grievance if codefendants could not insist upon such a right, for it might otherwise happen that a case could not be brought to a hearing against them alone, and thus they might be held in court for an indefinite period—perhaps during their whole lives—and very valuable property in their hands be incapable of safe alienation. No court of justice, and least of all a court of equity, could be presumed to suffer its process to become the means of such gross mischief."

This was followed by Judge Blodgett in Jessup v. Illinois & R. Co. (C. C.) 36 Fed. 735.

These reasons are more forcibly applicable to the defendants in this cause if the complainant's representative may not only refuse to proceed with this case by refraining from filing a bill of revivor, revivor and supplement, or such other bill as might be appropriate to the circumstances of the case, but during the suspension of this suit may harass the defendants by prosecuting the same cause of action before another tribunal. Apparently, at least, the purpose of this procedure in keeping this suit dormant is to carry on experimental litigation elsewhere, and, in the event of its failure, to renew the litigation in this court. Again, to insist that the defendants must proceed in the manner pointed out by section 955, and call upon the representatives of the complainant to revive the suit, would be to compel them to take a dangerous course. Defendants protest that the suit cannot be revived because of the facts stated, and that an original bill of some sort must be filed by the successor in interest of complainant. Defendants should not be required to hazard the loss of this defense, or to be put in the attitude of having waived it by calling the representative of the complainant into court, and thus recognizing his right to revive the suit. The personal representative of the complainant has for a year and a half taken no steps whatever to assert the rights of the complainant in this suit, but seeks to compel defendants to force him to revive the suit, and thus, if possible, preclude defendants from showing cause. Rule 56 gives him the power to call the defendants into court to show cause why the suit should not be revived. His position is that, as the suit has abated, it is not competent for the court to make any order or suffer any proceeding in the case until the suit has been revived. There being, as has been said, no express rule of procedure prescribed by the Supreme Court enabling defendants in this suit to compel a revivor thereof by complainant's administrator, or to compel contest of the right of revivor thereof, and the defendants thus practically left at

the mercy of the complainant, and vexed with litigation for the same cause of action in a state court, the case is one in which resort must be had to the practice and rules in such cases which obtained in England at the time of the enactment of our rules, having regard also to the peculiar facts of this case. It is not correct to say, as claimed, that no order can be made in a case abated by the death of the sole complainant. In Wright v. Mitchell, 18 Ves., Jr., 293, after a bill was dismissed for want of prosecution, on motion for payment of money in the registry of the court, Lord Eldon held that the court had the power to make the order; adding: "So in cases of abatement, the right being clear." A similar rule was made in Roundell v. Currie, 6 Ves., Jr., 650, where the case was abated by the death of the complainant, and the defendant could not revive. In Wharam v. Broughton, 1 Ves., Sr., 180–185, Lord Hardwicke said:

"The court will, notwithstanding the death of almost all the parties, make an order for delivery of deeds and writings, or send to the master for an inquiry to whom they belong, or order money to be paid out of the bank without a revivor."

In Knowles v. Colliery Company, 6 Jurist (N. S.) 291, cited in 1 Daniell's Chancery Practice, 810, the case had abated because of the outlawry of the plaintiff. A motion was made to dismiss the case for want of prosecution, and it was objected that, the suit being abated, a motion to dismiss would not lie. Sir W. P. Wood, in disposing of the motion, said:

"The present motion is unsupported by authority, but it seems unreasonable that a plaintiff's outlawry should have the effect of keeping litigation hanging over the defendant. * * * The plaintiff, it is true, is incapable of taking any steps in the suit; but this is entirely his own fault for not reversing the outlawry, and the defendant ought not thereby to be deprived of the right which he would otherwise have to be relieved from litigation which is not duly prosecuted. The bill must be dismissed, with costs."

The reasons for this judgment are equally cogent here. The administrator of the complainant is solely in fault in not proceeding under general equity rules 56 and 57. If the suit cannot, for inherent reasons, be revived, it is time that it be judicially ended. In Vernon, 318, and 1 Vesey, 182, quoted in Lube's Equity Proceedings (page 221), it is said:

"If a feme plaintiff marries pendente lite, although her interests in the subject of litigation be not gone, yet she voluntarily deprives herself of all title to sue alone, in consequence of which the suit becomes abated. * * * So, too, when a bankrupt or insolvent is sole complainant, his assignee may come before the court, and have the benefit of former proceedings by supplemental bill. For the same reasons, if any parties suing or sued en autre droit are changed or removed, their successors in the same right continue the litigation by supplement only." Lube's Equity, p. 222, and cases cited.

Discussing the effect of an assignment of his interest in the suit by a sole complainant, Lube's Equity Pleadings (page 220) says:

"The suit in his [complainant's] name will necessarily be rendered ineffectual * * * because the cause of action is transferred to another. This, though it, in effect, puts an end to the suit, is not however an abatement, and if three terms elapse without any further proceedings, the bill may be dismissed."

In Picquet v. Swan, 5 Mason, 569, Fed. Cas. No. 11,135, Judge Story recognizes the right of defendant to have the bill dismissed for want of prosecution when plaintiff suffers three terms to elapse after answer filed without taking any steps in the cause.

In Delauney v. Hermann, Baldw. 132, Fed. Cas. No. 3,757. Judge Baldwin recognizes the English practice exemplified in the quotation from Lube, citing 2 Maddocks' Ch. 235, as authority; but, as defendant had it in his power to compel a reply and a hearing in the cause, he enlarged the time for complainant to proceed until the next term, and required notice to be given to complainant.

In Hook v. Linton, 10 Pet. 107, 9 L. Ed. 363, the death of the appellee having been suggested, and the counsel for the executor having offered to enter his appearance for the executor, the court sustained a motion to dismiss the cause, as no person appeared to prosecute the suit for the appellants.

The fifteenth Supreme Court rule (3 Sup. Ct. x) prescribes the mode by which a defendant may compel an appearance by the representative of a deceased complainant in that court, but, as stated above, there is no such rule prescribed for the Circuit Courts in equity. See Barribeau v. Brant, 17 How. 43, 15 L. Ed. 34.

The quotations from Daniell's Chancery Practice, vol. 2, pp. 1507, 1542, are to the effect that "after a suit is abated, or after it has become defective by the bankruptcy of the plaintiff, it is irregular to move for the ordinary order to dismiss the bill for want of prosecution, and such an order will be discharged for irregularity." It will be found upon examination that this text is not in accord with the authorities hereinbefore cited. In chancery practice an abatement is merely a suspension of all proceedings in a suit, which generally may be revived by bill of revivor. Story's Eq. Pl. § 354. An abated action at law is generally without statutory aid, entirely dead, and cannot be revived. Hoxie v. Carr, 1 Sumn. 173, Fed. Cas. No. 6,802.

2. What has been said regarding the right and authority of the court to give equitable relief to a defendant, against whom a prosecution has been suffered to lie dormant, when there is a person in existence, as is conceded here, who may bring the defendant into court, and who must do so in order to continue a suit abated by the death of the complainant, has to some extent involved the decision of the claim that the personal representative of a deceased complainant may be permitted by a court of equity to suffer a suit to lie dormant before seeking to revive until the right to revive is barred by the statute of limitations. The degree of diligence in the prosecution of suits in equity which courts nowadays exact of suitors is irreconcilable with the proposition that the personal representative of a deceased complainant may keep the litigation hanging over the head of the defendants until the statute shall have barred his right. The circumstances must be peculiar and extraordinary and the equities insuperably strong which would excuse the delay of a personal representative to revive a suit after a reasonable time from its abatement; and the strong inference in this cause, from the inaction of the administrator, is that the suit will not be revived, and that his purpose is to hold it in terrorem over the defendants while

experimenting in another tribunal. This purpose will not be tolerated in a court of equity.

In Wharam v. Broughton, 1 Ves., Sr., 180, where a wife's claim to the relief prayed was met by a technicality because of the death of her husband, Lord Hardwicke says: "So that the plaintiff may come at justice, I will, so far as possible, chalk out a method to come at it."

3. Upon the admitted facts of this case, there are strong grounds for dismissing this bill on the ground of the abandonment of the suit by complainant's personal representative. Without repeating the history of the litigation which has been waged for the same subject-matter as that set forth in the bill in this suit by White, his administrator, Spalding, and the late complainant, Frances M. Brown, and by Albert W. Brown in Massachusetts, who followed the Massachusetts case to judgment, the facts of the revival of the commission in the probate court of Wayne county on Fletcher's estate here, and the prosecution before the commission on claims in the probate court of the claim settled by the decree in the Massachusetts court, and the failure of the personal representative to revive this suit, or to take any step looking to that end, parallel the case of Bryar v. Campbell, 90 Fed. 690, 33 C. C. A. 236, and Id., 177 U. S. 649, 20 Sup. Ct. 794, 44 L. Ed. 926, and equitably require the like judgment upon their purpose and effect. While the period of abandonment is not so long as in that case, the purpose to look for relief to the prosecution of the claim in the probate court is as unequivocal. The commissioners on claims could by allowance of the claim give as full and adequate redress as could this court in this suit, and for precisely the same cause of action. The resort to the probate court is a renunciation and abandonment of this suit, within the reasoning of the two cases last cited.

4. The fourth ground is that Brown has elected to pursue his claim in the state court. He has thus taken a position to which he could have been compelled if the suit had been revived; because it is within the power of a court, both in this country and in England, to compel an election by one who is prosecuting simultaneously a suit in equity and an action in another jurisdiction. "Where a plaintiff has sued both at law and in equity at the same time, for the same matter, the defendant is entitled to an order that the plaintiff do elect whether he will proceed with the suit in equity or with the action at law." 1 Daniell's Chancery Practice, 815; 1 Barbour's Chancery Practice, 247; 7 Amer. & Eng. Encyc. Pl. & Pr. 374; and 20 Amer. & Eng. Encyc. Pl. & Pr. 270. In the latter it is said:

"It is not infrequently the case that a suitor is confronted with a choice of jurisdiction on the same state of facts, and has the right to invoke the aid of either a court of law or a court of equity. If he resorts to both, he will ordinarily be compelled to make his election, adopting one and abandoning the other. This policy is administered usually, if not always, by the court of equity, sometimes on its own motion, but generally on the motion of the defendant."

See, also, Bradford v. Williams, 2 Md. Ch. 5.

The ground of this doctrine is that justice requires that a defendant

should not be harassed by two suits for the same cause of action at the same time. Judge Story says (Equity Pleading, § 742):

"The question which next presents itself is whether the pendency of an action in a court of law for the same subject-matter is a good objection to be urged in a plea of this sort in a court of equity. It is the established rule that such a plea is bad and unavailable in equity. * * * The defendant is not, however, without a remedy for the double vexation, for a court of equity will, upon the coming in of the defendant's answer, put the plaintiff to his election whether he will proceed in the suit at law or in equity, and, if he elects the latter, then an injunction will issue to any further proceedings at law; if the former, then the bill will be dismissed."

The same doctrine is stated by Mr. Justice Campbell in Joslin v. Millspaugh, 27 Mich. 518, where he says:

"It has always been the practice in equity in all but mortgage foreclosures to require a party who sues at law on the same cause of action to elect after answer whether he will prosecute at law or in chancery. * * * But in cases where election was practically a matter of course, the pendency of another suit was not pleadable in abatement either at law or in equity. There is no such thing known in a common-law court as a plea in abatement of a suit in equity. A party having a common-law right was allowed to proceed at common law if he chose, and could only be restrained by the court of equity by way of injunction, or some other prohibitory measure; and in like manner the suit at law was not brought before the court of equity by plea in abatement, but usually suggested on motion after answer, unless appearing by the pleadings."

If the fact of the two suits appear in the pleadings, the court may act.

In 7 Amer. & Eng. Enc. Pl. & Pr. 374, it is said that "the court upon its own motion may compel the election."

In Central Railroad Company of New Jersey v. N. J. West Line R. R. Co., 32 N. J. Eq. 67, an election was compelled on application made after answer filed. The court says:

"In Lathrop Sewing Machine Company v. Bond & Lathrop Manufacturing Company, in this court in 1868, the complainants were required before answer filed to elect between a suit in equity in New York and that suit."

In the case at bar the complainant has made his election voluntarily. It is too late for him to recede and "change his hold." He has acted deliberately, and persists in his choice. The admitted facts upon which the motion to dismiss is founded are strongly persuasive, if not conclusive, that if the personal representative of complainant had been admitted to prosecute the cause, he could have been compelled to elect between his action in the probate court and this suit.

5. The proposition that the assignment of the interest of the late complainant of her claim in this suit to Albert W. Brown abated the suit, and the court will dismiss the bill when the fact is brought before it, is well sustained by the authorities. The cases cited in its support are Wallace v. Dunning, Walk. Ch. 416; Niles v. Ransford, 1 Mich. 338, 51 Am. Dec. 95; Webster v. Hitchcock, 11 Mich. 56; Perkins v. Perkins, 16 Mich. 162; Brewer v. Dodge, 28 Mich. 359.

In Dunn v. Allen, 1 Vern. 426, it is said that an assignee or purchaser cannot have a bill of revivor for want of privity. So a devisee, being but a purchaser, and not representing the devisor, cannot have a bill of revivor for want of privity, but must have an

original bill. Story v. Livingstone, 13 Pet. 365, 10 L. Ed. 200; Hinde's Practice, 49, 69; Russell v. Craig, 3 Bibb, 377; Peer v. Cookerow, 14 N. J. Eq. 361; Brown v. Minter, 2 Ala. 406. In Lube's Eq. Pl. 140, it is said that only the heir, executor, or administrator of a deceased party or the husband of a feme covert, can have a bill of revivor. See, also, Benson v. Wolverton, 16 N. J. Eq. 110; Slack v. Walcott, 3 Mason, 508, Fed. Cas. No. 12,932.

If, therefore, Brown has, by assignment or devise, acquired the interest of the original complainant and his heirs and personal representatives, this suit cannot be revived, but he must file an original bill. This fact also authorizes the dismissal of the suit. Barribeau v. Brant, 17 How. 43, 15 L. Ed. 34; Campbell v. City of New York (C. C.) 35 Fed. 14.

The case at bar is like that of Bryar v. Campbell, supra, which the Court of Appeals (90 Fed. 691, 33 C. C. A. 236) pronounced "an extraordinary case."

Upon the grounds that the English practice permits the dismissal of the case for want of prosecution, in the interest of justice, even after it is abated, because of the abandonment of the suit in this court, the failure of the personal representative of the late complainant to take the necessary steps to revive the same, the inability of defendants to compel complainant to revive, and because Albert W. Brown has voluntarily elected to prosecute his suit in the state court for the same cause of action as that in which the bill in this case was filed by Frances M. Brown, administratrix, justice requires that the bill in this cause should be dismissed for want of prosecution, with costs.