# BRYAR *v.* CAMPBELL.

## APPEAL FROM THE COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 227. Argued April 12, 1900. — Decided May 14, 1900.

Plaintiff's intestate, a married woman, filed a bill in the District Court of the United States against her husband's assignee in bankruptcy and the purchaser of a lot of land at the assignee's sale, setting forth her equitable claim to the property, and praying that the purchaser be required to convey to her. A decree was entered in her favor and an appeal taken to the Circuit Court by Campbell, the purchaser. Plaintiff did not press the appeal, but began a new action in ejectment in a state court against the defendant, Campbell, who set up a new title in himself and recovered a judgment. Thereupon, and sixteen years after the decree in her favor in the District Court, plaintiff moved to dismiss the appeal to the Circuit Court. This motion was denied. Thereupon she set up the decree in her favor, although it had not been pleaded by either party in the state court. *Held:*
(1) That the plaintiff having abandoned her suit in the District Court, it was too late to move to dismiss the appeal;
(2) That the decree not having been pleaded in the state court could not now be resuscitated;
(3) That the judgment of the state court was *res adjudicata* of all the issues between the parties, and that the decrees of the Circuit Court and Circuit Court of Appeals reversing the decree of the District Court and dismissing plaintiff's bill should be affirmed.

THIS was a suit in equity instituted in the District Court for the Western District of Pennsylvania, April 30, 1877, by Jane Bryar against James Bryar, her husband, and Robert Arthurs, his assignee in bankruptcy, to enjoin the latter from partitioning or offering for sale an undivided half of seven acres of land in the city of Pittsburgh, for which, as she alleged, a conveyance had been made by mistake to her husband, though she had paid the purchase money with her own individual funds. Notwithstanding the pendency of this bill the assignee proceeded to sell the land at assignee's sale to the defendant Thomas Campbell, subject to the two mortgages hereinafter mentioned. On August 15, 1878, Campbell was permitted to intervene and de-

fend the bill, the bill being amended by a new prayer that the defendants make, execute and deliver to the plaintiff a deed for the property in question.

The case was heard upon pleadings and proofs, and on June 26, 1879, a decree was rendered in favor of the plaintiff, declaring her to be the equitable owner of the land in suit; that defendant Campbell was chargeable with notice of her rights, and was bound to convey according to the prayer of the bill. An appeal was immediately taken by Arthurs and Campbell to the Circuit Court, where the case was docketed August 30, 1879. Here the case rested, without further action, for sixteen years, and until December 20, 1895.

Meantime, however, and in February, 1880, Jane Bryar and her husband in her right, began an action of ejectment in the Court of Common Pleas of Allegheny County against Thomas Campbell, John W. Beckett and William B. Rodgers, for the land in controversy, which resulted, May 19, 1881, in a verdict for the defendants, and a writ of error from the Supreme Court of Pennsylvania, which, on November 14, 1881, affirmed the judgment of the Court of Common Pleas. 30 Pitts. Legal Jour. 12.

Nothing further appears to have been done until December 30, 1895, when Mrs. Bryar moved the Circuit Court for the Western District of Pennsylvania for an order declaring the appeal of Thomas Campbell from the decree of the District Court, deserted, upon the ground that the appellants had failed to bring up the record from the District Court, to pay the entry costs, or to prosecute their appeal to the next term of the Circuit Court. Campbell filed an answer to this motion, setting up his purchase of the land at assignee's sale, and stating that he had not prosecuted his appeal because he had purchased a mortgage made by James Bryar to Edward R. James, upon which mortgage the property had been sold to his attorney, William B. Rodgers, who had conveyed to him; that he went into possession of the land; that the petitioner and her husband had brought the action of ejectment against him above referred to, and a verdict had been rendered in favor of the defendants; that he believed the result of the ejectment case made it unnecessary

for any further proceedings upon the appeal, and that he and his vendees had ever since been in undisputed possession of the land. The motion to dismiss the bill, or rather to declare the appeal deserted, was denied, and the death of the plaintiff Jane Bryar being suggested, it was ordered that her heirs at law, the appellants, be substituted as plaintiffs.

The appeal subsequently went to a hearing in the Circuit Court upon the former testimony, and new testimony put in by Campbell in support of his answer, and resulted in a reversal of the District Court, and a dismissal of the bill. Plaintiffs appealed to the Circuit Court of Appeals, which affirmed the decree of the Circuit Court, 62 U. S. App. 435, whereupon plaintiffs appealed to this court.

*Mr. Edward Campbell* and *Mr. Lowrie C. Barton* for appellants.

*Mr. W. B. Rodgers* for appellee.

MR. JUSTICE BROWN, after making the above statement, delivered the opinion of the court.

Plaintiffs ask for a reversal of this decree upon the grounds, first, that the appeal from the District Court to the Circuit Court in bankruptcy was not claimed and notice given to the clerk of the District Court within the time prescribed by the rules; and, second, because it affirmed the decree of the Circuit Court upon its merits.

1. If there be anything in the defence that the appeal from the District Court to the Circuit Court in the bankruptcy proceedings was not taken within the time prescribed by law, it comes too late. It is true that Rev. Stat. sec. 4981, declares that " no appeal shall be allowed in any case from the District to the Circuit Court, unless it is claimed, and notice given thereof to the clerk of the District Court, to be entered with the record of the proceedings, and also to the assignee or creditor, as the case may be, or to the defeated party in equity, within ten days after the entry of the decree or decision ap-

pealed from."  It appears that the decree of the District Court
was entered June 26, 1879, and that a petition for an appeal
was addressed to the judge of the Circuit Court, the jurat to
which was dated June 28, and on June 30 a bond for costs on
appeal was filed.  The appeal, however, to the Circuit Court
was not allowed and filed until July 16, twenty days after the
decree of the District Court, and it does not appear that any
notice was given to the clerk of the District Court, or to the
defeated party, as required by section 4981; but it further ap-
pears that the petition for appeal, the allowance thereof, a copy
of the docket entries and a bond for costs were filed in the Cir-
cuit Court, August 30, 1879.  Here the matter rested until
December 20, 1895, when Mrs. Bryar, the prevailing party,
moved the Circuit Court, not to dismiss the appeal for the rea-
son that it was not taken in time, but, stating that it had been
"duly allowed," to obtain an order declaring it deserted, for
the reason that the appellants had failed to bring up the record
from the District Court, pay the entry costs or prosecute their
appeal.  This was apparently treated as a motion to dismiss,
and was denied.  After a lapse of sixteen years it is now too
late to ask this court to hold that the appeal should have been
dismissed for a reason which does not seem to have been called
to the attention of the Circuit Court, when the original motion
was made to declare the appeal deserted.  If the plaintiffs in
that case had intended to insist upon their rights under the
decree, they should either have moved to dismiss the appeal
within a reasonable time, or pressed it to a hearing in the Cir-
cuit Court, instead of abandoning it and bringing a new suit
upon the same cause of action in the state court.

2. The case upon the merits depends upon the effect to be
given to the judgment in favor of Campbell in the ejectment
suit brought by Mrs. Bryar in the state court.  Mrs. Bryar ap-
pears, for some unexplained reason, to have abandoned her orig-
inal suit in the District Court, notwithstanding the decree in
her favor, and to have elected to begin an action in ejectment
in the state court.  To this action Campbell appears to have
set up a new defence, which had accrued since the decree in
the District Court, arising upon two mortgages executed in

1874 by James Bryar, namely, one to Thomas McClintock for $3000, the other to E. R. James for $2000, which mortgages were, in 1878, foreclosed and judgment entered. In the opinion of the Supreme Court of the State it is stated that William R. Rodgers, one of the defendants in the ejectment action, as the attorney for Campbell, purchased the judgments obtained upon the mortgages, issued execution, sold the seven acres at sheriff's sale, and bought the same for $50. A deed was made by the sheriff to Rodgers; who gave a memorandum to Campbell, stating that he would convey to any one Campbell might wish, when requested so to do. It was not disputed that Rodgers bought and held in trust for Campbell whatever title he obtained by the sheriff's deed.

Upon this state of facts the court held that the mortgages were valid liens, and the fact that the mortgagees were entirely unaffected by any notice of the secret equity of Mrs. Bryar being undisputed, it necessarily followed that, whether Campbell had notice or not, he stood in their shoes when he purchased the title derived from them. "It is contended, however, that Campbell having bought at the assignee's sale, subject to these mortgages, was bound to pay them off, and when he did so they were extinguished. But unless he expressly or by necessary implication agreed to pay them, he was not bound to do so, and had an undoubted right to secure his own title by purchasing them and proceeding to perfect his title under them." It will be seen from this that Campbell did not rely upon his purchase at the assignee's sale, as to which the District Court seems to have held that he had notice of Mrs. Bryar's equity in the premises, but upon the purchase of the rights of the mortgagees, who appear to have taken the mortgages, supposing the property to belong to James Bryar, in whose name it stood upon the record.

We are advised of no substantial reason why the judgment of the state court does not operate as *res judicata* in this case. The original suit in the District Court was begun by Mrs. Bryar, one of the original plaintiffs in the ejectment suit, for the purpose of compelling the defendant Thomas Campbell to convey to her as the equitable owner thereof the premises now in dis-

pute.  The ejectment suit was begun by her and her husband, in her right, upon the same title against three defendants, one of whom was Campbell, to obtain possession of the same property.  The action was brought by Mrs. Bryar upon her equitable title, a procedure allowable in the courts of Pennsylvania, where an equitable ejectment is the full equivalent of and substitute for a bill in equity.  *Peterman* v. *Huling*, 31 Penn. St. 432; *Winpenny* v. *Winpenny*, 92 Penn. St. 440.  Such procedure, though not authorized by the practice of the Federal courts, will be respected when the question arises upon the effect to be given the judgment.  *Miles* v. *Duryee*, 7 Cranch, 481; *Miles* v. *Caldwell*, 2 Wall. 36; *Faber* v. *Hovey*, 117 Mass. 107.  While it appears from the opinion of the Supreme Court of the State that the decree of the District Court was called to its attention, it was not set up as a bar to the ejectment in the state court for the obvious reason that Mrs. Bryar had abandoned it by bringing suit in the state court, and there was no object in pleading it, while Campbell did not plead it because it was adverse to him.  It would seem, too, that under the practice in Pennsylvania a decree cannot be used as *res judicata* pending an appeal to a higher court.  *Souter* v. *Baymore*, 7 Penn. St. 415.  He could not even plead the pendency of the former suit.  *Smith* v. *Lathrop*, 44 Penn. St. 326; *Stanton* v. *Embrey*, 93 U. S. 548, 554.

It is now contended that the existence of this prior decree ousted the jurisdiction of the state court.  Indeed the only object of Mrs. Bryar in endeavoring to have the appeal dismissed seems to have been to reinstate the original decree in her favor more effectually, and to insist that it was a final disposition of the matters in controversy between herself and Campbell.  The question is whether, having abandoned the original decree for a new action in the state court in which she was defeated, her heirs can now claim that the original decree in the District Court, though not set up as a bar by either party, and notwithstanding the appeal, can be resuscitated after a lapse of sixteen years for the purpose of defeating the action of the state court.  To state this proposition is to answer it.  The state court was at liberty to proceed to dispose of the case upon

the issues made by the parties, and as neither party saw fit to set up the former decree as a bar to the action, the state court was not bound to notice it. It did not affect in any way the jurisdiction of that court. In addition to this, however, Campbell relied upon a wholly different defence from that set up by him in the former suit, and one which had accrued to him after the decree in that court was rendered. Whether the decree, if properly pleaded, would have operated as a bar it is unnecessary to determine. As the same issues are presented here as were presented in the state court, it is entirely clear that they cannot be relitigated.

The judgment of the state court was conclusive upon these issues, and the decree of the Circuit Court of Appeals to that effect was correct, and it is

*Affirmed.*