NICHOLLS, J.
Applicants in this matter are the Middlesex Banking Company, alleging itself to be a corporation organized under and domiciled in the state of Connecticut, the Southern Land Company, a corporation organized and domiciled in the state of Tennessee, and the Realty Investment Company, a corporation organized under and domiciled in the state of New Jersey.
The Realty Investment Company alleges:
“That it is the owner of a plantation in the parish of Concordia, known as the ‘Helena Plantation,’ worth about $60,000; that some years ago it laid off a town site named Ferriday upon part of said plantation, divided the same into lots and squares, and sold portions thereof to various persons, most of whom had been made defendant in the suit thereinafter mentioned; that said sales were made by warranty deed, the title to which it was bound to defend.
“That petitioner the Realty Investment Company acquired said plantation on the 1st day of October, 1902, by a deed from the Southern Planting Company, a corporation organized under the laws of the state of Minnesota, and domiciled at St. Paul, in said state; that the Southern Planting Company acquired said property on January 4, 1906, by deed from William Lawrie, who acquired said property in November, 1895, by deed from petitioner the Southern Land Company ; that petitioner the Southern Land Company acquired said property by a, deed from the Farm Land Company, of date March 9, 1895, and the Farm Land Company acquired said property -by deed from Joseph C. Ferriday, of date the 2d day of February, 1893.
“That at the time of the transfer of said property by the said Ferriday to the Farm Land Company there was a private, unrecorded agreement between the said Ferriday and the Farm Land Company, of which petitioner the Realty Investment Company never had any notice, and by which it is not bound, whereby, on the happening of certain conditions prior to 'January 1, 1894, this property was to be transferred to Ferriday, if he so requested, which conditions were never complied with, and which agreement failed because of the failure of the conditions.
“That thereafter, in the year 1894, another agreement, verbal in its nature, and unrecorded, was made between Ferriday and the Farm Land Company and the Middlesex Banking Company, of which petitioner the Realty Investment Company never had any notice, express or implied, whereby they agreed upon certain conditions to retransfer said property to Ferriday, which con■ditions never were complied with by the said Ferriday, and never became operative between the parties, but that preliminary to the execution of said agreement the said Ferriday issued a mortgage upon said property to the Middlesex Banking Company for about fifty-three thous- and dollars ($53,000); that said Ferriday died in December, 1894. and the Middlesex Banking Company and the Farm Land Company made application to Ferriday’s widow and heirs offering to permit them to carry out the verbal agreement made with Ferriday relative to' the retransfer of the property, and gave them the benefit of said agreement, if they so desired, but that the said widow and heirs of Ferriday positively refused to carry out said agreement in any respect, and thereupon, as a matter of precaution, to cut off any interest they might thereafter claim under said agreement, the widow and major heirs of said Ferriday executed quitclaim deeds of their interest in the said Helena Plantation to the Southern Land Company, which was then under an agreement for the purchase of said property from the Farm Land Company, and to whom deed was made by the Farm Land Company a few days later.
“That at that time two of the heirs of said Ferriday were not of age, to wit, B. Pendleton Ferriday and Emily A. Ferriday, but they were respectively 16 and 17 years of age, and, the parties being unable to make any agreement *773 ■with these minors whatsoever, the said minors voluntarily executed an agreement to the effect that when they became of age they would execute similar quitclaim deeds to said property to the Southern Land Company.
“That thereafter, in the year 1895, the Middle-sex Banking Company, under the advice of counsel, took proceedings to foreclose the mortgage put upon the Helena Plantation in the Tenth judicial district court in and for the parish of Concordia, state of Louisiana, where said plantation was situated, and conducted the said proceedings against the said minors, who were absentees, by the appointment of a curator ad hoc to represent them; said proceedings being conducted in strict accordance with law, and having for its object to cut off whatever possible claim the minors might pretend to set up in and to said property under the verbal agreement aforesaid.
“That the said two minor heirs' of Eerriday were B. Pendleton Eerriday and Emily A. Eerriday, who_ is now the wife of John D. Vincent, and who live, respectively, the one in Natchez, Miss., and the other in Vicksburg, Miss.
“That the said two heirs of J. C. Eerriday, after they became of age, stood by in silence, without giving any intimation of their claim, and saw your petitioner the Realty Investment Company in good faith buy said property, exploit it, improve its value, lay off a town site, divide it into town lots, and sell said property to innocent purchasers, and on or about the 23d day of Eebruary, 1904, the said B. Pendleton Eerriday and the said Sirs. Emily A. Eerriday, wife of John D. Vincent, aided, authorized, and assisted by her said husband, acting by and through Wade R. Young, their counsel, who resides in Natchez, Miss., filed a suit against your petitioners in the Tenth judicial district court' for the parish of Concordia, state of Louisiana, seeking to recover from your petitioner the Realty Investment Company a one-third undivided interest in the said Helena Plantation, and seeking to obtain from your petitioner an accounting for rents and revenues, and an accounting of the amount due on the mortgage of their ancestor, seeking an accounting of the community which existed between their father and mother, and seeking an accounting from your petitioner the Realty Investment Company of such town lots as it had sold up to that date, and asking a partition of the property by licitation.
“That the said plaintiffs in said cause being citizens of the state of Mississippi, and your petitioners herein being citizens of different states, removed said suit into the Circuit Court of the United States for the Western district of Louisiana.
“That the plaintiffs in said cause remodeled their pleadings in the said Circuit Court of the United States to conform to proceedings in a court of equity. Your petitioners demurred to said supplemental and amended bill. The demurrer was overruled. Your petitioners answered the said bill. Replication was filed, and the proofs, in enormous volume, were taken, and the ease was called for trial on the merits at the April, 1906, .term of said court at Monroe, La.
“That said cause was submitted by the complainants at that term of the court, and the same was continued for hearing at the May term of court at Alexandria, La., by consent of all the parties. The said cause came on for hearing at the May term of said court, at Alexandria, at which time the said complainants presented to the court a motion to remand the cause to the state court, and the said court, on the 15th day of May, 1906, entered a final decree, refusing the motion to remand and rejecting the claim of said parties, and thereafter adjourned for the term.
“That thereafter the complainants filed what was called a ‘motion for rehearing,’ or to reinstate the case, which came on for trial at the October term of said court at Shreveport, and was argued and submitted to the court, and on the 24th day of October, 1906, the said court entered an order denying the motion for a rehearing.
“That on or about the-day of May, 1905> after the said cause had been partially tried and submitted by the complainants in the United States Circuit Court for the Western district of Louisiana, and before it had come on for further hearing at Alexandria, La., the said B. Pendleton Eerriday, and the said Emily A. Eerriday Vincent, joined by her husband, through the same attorney, Wade R. Young, filed in the Tenth judicial district court for the parish of Concordia, a suit against your petitioners and against all persons to whom your petitioner the Realty Investment Company had sold town lots in the toWn of Eerriday since May, 1904, all or most of whom are citizens of the state of Louisiana, setting up in said petition against your petitioners and against its codefendants identically the same allegations as those set up in the said suit previously filed in the said Tenth judicial district court and removed to the United States Circuit Court for the Western district of Louisiana, and asking identically the same relief against your petitioners as was asked in that ease; that is, to recover one-third interest in the property, to recover the rents and revenues and have an accounting for rents and revenues for the amount due on the mortgage, for a settlement of the community between Joseph C. Eerriday and his wife, and for a partition of the property by licitation.
“That your petitioners not being able to remove said cause into the Circuit Court of the United States because of the many parties, citizens of the state of Louisiana, made parties defendant in said suit, and not being able to plead to said decree in the United States Circuit Court in the first case, either as res adjudicata or as lis pendens, made in the said second suit in the Tenth judicial district court for the parish of Concordia a motion to stay said cause, and appealed to said court to recognize the judicial comity which prevails between courts of the state and courts of the United States, and to refrain from any further proceed *775 ing in said suit, until the said decree of the Circuit Court of the United States for the Western district of Louisiana should either be set aside by rehearing or by appeal.0 That said motion was made and came on for hearing in said Tenth judicial district court for the parish of Concordia before the Honorable John S. Boatner, judge, in the month of July, 1906, before the application for rehearing in the case in the United States Circuit Court for the Western district of Louisiana had been disposed of; that on the hearing of said motion, he granted the order to stay, but afterwards, on a motion for a new trial, reversed his decision and overruled the motion to stay. That thereupon your petitioners were compelled at great cost and expense to prepare for the trial of said case, and the said case came on for hearing before the Honorable John S. Boatner, judge, on the 10th day of October, Í906, when an agreement was reached that the court should first express its opinion upon the question of title, and if it should be of opinion that the plaintiffs were entitled to recover, then the parties should proceed to the trial of the other issues involved therein, and that upon that agreement the cause was submitted to the court on the 5th day of November, 1905, on which date, at the opening of the court, your petitioners presented to the said court and renewed its motion to stay said cause, and, for ground of the motion to renew said motion to stay, presented and filed with the court a certified copy of the order of the United States Circuit Court for the Western district of Louisiana, dated October 24, 1906, denying the rehearing in the case pending in said court, but that the judge immediately overruled the said motion to stay and took the said cause under advisement, with a statement that he proposed to decide the case on Wednesday, the 7th day of November, 1906.
“Now petitioners aver that it was the duty of the Honorable John S. Boatner, judge of the Tenth judicial district court, on presentation to him of the motion to stay said cause, and on presentation to him of the certified copy of all the proceedings had in the said suit No. 296 of the docket of the United States Circuit Court for the Western district of Louisiana, styled ‘B. Pendleton Ferriday et al. v. Middlesex Banking Company et al.,’ which said certified copy of said proceedings was duly presented to him, and duly filed in said court to stay the proceedings in said cause until the final decree therein rendered in the Circuit Court of the United States for the Western district of Louisiana had been duly and properly disposed of on appeal, or until the delay for appeal in said cause had elapsed, in order that your petitioners might plead the same as res adjudicata in said state court.
“That the said second proceeding now going on in the state is vexatious in its nature, and is prosecuted in violation of that fundamental rule of comity which exists between the courts of the state and the courts of the United States, to the effect that where one court is ves.ted with exclusive jurisdiction of the whole subject-matter, and where the nature of the cause is such that the court might at any time during the progress of said suit be called upon to take possession of the property in litigation by a receiver, or otherwise, and have the said property sold and the proceeds paid into the court, no other court of another sovereign will entertain jurisdiction of any cause covering the same subject-matter and seeking the same relief between the same x^arties, and that on proper motion, where such second suit is brought, the same will be stayed as long as the ends of justice may require.
“And your petitioner the Realty Investment Company avers that it is the owner of said Helena Plantation, and the warrantor of all the lots sold to its other codefendants in the town of Eerriday laid off on said plantation; that it is obligated to defend all of such persons to whom it has so sold said lots; and that the said final decree in the United States Circuit Court in its favor against the said two heirs of Eerriday is a full, complete, and final defense to any and all claims of the said two heirs of Ferriday, and will bind and conclude them' absolutely, unless the said judgment is reversed or amended on appeal.
“And your petitioners aver that the said Emily A. Eerriday, wife of John D. Vincent, and John D. Vincent, her husband, and B. Pendleton Eerriday, have not appealed from the said final decree in the said cause in the United States Circuit Court for the Western district of Louisiana, but that they hope to race and drive the suit now pending in the Tenth judicial district court for the parish of Concordia to a final decree, if possible, in the state court, before the delays for appeal in said cause elapse, hoping thereby to be able to cut off your petitioners’ right to plead the said decree as res adjudicata between the parties.
“Your petitioners further aver that the said B. Pendleion Eerriday, and the said Emily A. Eerriday Vincent, and the said John D. Vincent, her husband, and the said Wade R. Young, their counsel, are nonresidents of this state and outside of the jurisdiction of this court, and that the process of this court cannot be made upon them in this cause if there should be any need to make them parties to this suit, but your petitioners aver that they are not necessary parties to this proceeding, and that the same can be conducted against the Honorable John S. Boatner, judge of said court, without the presence of the said parties.
“Your petitioners aver that the case presented in this petition is one calling for the exercise by this honorable court of the supervisory jurisdiction over all of the inferior courts of the state of Louisiana, as provided in the Constitution of the state, and that this court will not permit the Tenth judicial district court in and for the parish of Concordia, state of Louisiana, to proceed any further with the trial of said cause above set forth, but that this honorable court will, by the exercise of its power of prohibition, direct the Honorable John S. Boatner, judge of said - court, to stay the said cause.
“In view of the premises and the annexed af *777 fidavit, your petitioners pray that the Honorable John S. Boatner, judge of the Tenth judicial district court in and for the parish of Concordia, state of Louisiana, may be ordered to show cause, on a day to be named by the honorable court, why a writ of prohibition should not issue against him, prohibiting and restraining him from proceeding any further with the trial or disposition of the case of B. Pendleton Ferriday et al. v. Middlesex Banking Company et al., No. 2384 on the docket of the Tenth judicial district court in and for the parish of Concordia, state of Louisiana, and why he should not be commanded to stay the said cause, and to take no further action or proceedings therein until the final disposition on appeal of the case of B. Pendleton Ferriday et al. v. Middlesex Banking Company et al., No. 209 of the docket of the Circuit Court of the United States for the Western district of Louisiana, at Monroe, or until the final delays for appeal in said cause have elapsed; and may it please your honors on final hearing to make the said writ of prohibition perpetual and final in the terms of said preliminary order, and may it please your honors to grant a temporary writ of prohibition in the terms above prayed for, restraining the said Honorable John S. Boatner, judge, from acting_ any further in said cause, and until the said writ of prohibition can be heard and determined in this court. Petitioners pray for costs and for general relief.”
On reading this application, the district judge for the parish of Concordia was ordered to show cause why a writ of prohibition should not issue as prayed for, and he was commanded to stay all further proceedings and actions.
The district judge, for answer to this rule to show cause, averred that he could—
“neither admit nor deny the facts stated in the petition, except as afterwards in his answer set out, for the reason that the case has been submitted to him on the law and the facts, and he has not yet rendered his judgment therein, and does not feel at liberty to express any opinion, or to comment on the facts, except to say that parts of the statement do not appear to conform to the facts as adduced on the trial, and were doubtless suggested by the zeal of counsel, in the cause of his clients.
“(2) That he has no concern with the motives of the parties, either in the prosecution or defense of the suit, and conceives it to be his duty to pass on and decide the questions of fact and of law submitted to him, and not on the motives of the parties litigant.
“(3) And, further answering, this respondent says that the plaintiffs, about the 16th of April, 190G, instituted their suit in his court against the defendants named, to be recognized as owners of the one undivided third interest in the property described in their petition, as children and forced heirs of their father, the late J. 0. Ferriday, and to have a certain contract rescinded by which they, being then minors, residing in the state of Mississippi, and without a tutor or guardian in either state, were sought to bind themselves, on becoming of age, to execute to the Middlesex Banking Company, mortgagee, or to its assignee, quitclaim deeds to their interest in said property, for the consideration of the mortgage debt, as had been done by their coheirs at the time of the death of their said father, about January 5, 1895, and to have a foreclosure sale of said property by the mortgagee, about July, 1895, decreed to have been null and void, on the grounds: (1) That the mortgaged property, with the consent and the special instance of the Middlesex Banking Company, mortgagee, had passed from the possession of the debtor and his heirs to the Southern Land Company, which had entered into possession as owner under the contracts with the heirs, and as such owner had executed a new mortgage for the debt, which was accepted by the mortgagee, the Middlesex Banking Company, and that the court was without jurisdiction, ratione materias, to order the writ of seizure and sale. (2) That the curator ad hoc appointed to represent them in said suit, as absent minors residing in the state of Mississippi, and without a tutor in the state of Louisiana, was not sworn as required by law. (3) That the curator ad hoc so appointed did not accept the appointment or give any notice of the suit to them, or to any one for them, and that although they were residing with their mother in the city of Natchez, within 1% miles of the courthouse in the parish of Concordia, neither they, nor any one of them, ever had either notice or knowledge of such suit.
“And prayed to have foreclosure sale decreed to have been null and void, or to be annulled and avoided, and to be allowed to redeem said mortgage upon the payment of the debt and interest, less the income and profits, and for an accounting and for a partition.
“That the defendants all appeared, and, without objecting to the jurisdiction of the court, pleaded the exception of no cause of action and the plea of prescription. That the case stood for trial on those pleas, when about May 22, 1906, some of the defendants filed a copy of the record of a suit in the United States Circuit Court for the district, claiming that a final decree had been rendered between the same parties and for the same cause of action, in that court, which operated neither lis pendens nor res judicata, but which imposed on his court the duty of staying all proceedings until the decree of the United States Circuit Court had been affirmed or reversed on appeal, or until the delays for each appeal had elapsed. That this respondent, on hearing the motion for the stay of proceedings, was first of the opinion that the motion should be sustained, upon the authority of certain opinions of the Circuit Court of. Appeals for the Eighth Circuit, cited for defendants and so held, but that upon a *779 motion for a rehearing and further consideration the respondent was convinced that he had been misled, and granted the rehearing and denied the motion. That the cause came on to be tried on the exception of no cause of action and the plea of prescription, and the exception was overruled and the plea referred to the merits, and a default entered against all the defendants. That the defendants filed their answers at the July term, and the cause was continued to the first Monday of October, and set for that day. That on the first Monday of October the cause was again continued at the request of defendants to the Wednesday of the following week, and on that day the defendants submitted a written agreement, duly executed by the counsel for the parties plaintiff and defendant, by which it was stipulated that the case should be first tried upon the question of title, and that if the court held, that the plaintiffs had been divested of title, either by the foreclosure sale, or by the conveyance executed by J. 0. Ferriday to the Farm Land Company, in February, '1895, which might be either a fee simple or a pignorative security, the court should render judgment rejecting the plaintiffs" demand ; but that, if the court held that the plaintiffs had title, the cause should proceed for the purposes of an accounting of the debt and interest, and of the rents and revenues, and a partition and distribution of the proceeds.
“That under this agreement the evidence for plaintiffs and defendants was adduced, and the •ease argued and continued to October 24th, and for further argument when the cause was submitted and taken under advisement by the court, until the first Monday of November, when a decision was to be rendered. That on said first Monday of November the attorney for defendants submitted a brief which should have been submitted a week before, and filed another motion for a stay of proceedings, and therewith a copy of an order showing that the United States Circuit Court had on October 24th denied the petition for rehearing in the cause pending in that court, and that respondent, for the reasons given hereinafter, again overruled the motion, but as a courtesy to the attorney for defendants, and to be more fully advised in the premises, withheld his decision until Wednesday, November 7th.
“Now your respondent says that he has considered and decided the various questions in the case as they were presented, and has given them patient and attentive consideration, and that if he has committed any error therein, either' of law or of fact, the parties have complete and adequate remedy by appeal to this honorable court, and if they be denied any right claimed under the Constitution or laws of the United States, and be aggrieved by the decree of this court, by writ of error from the Supreme Court of the United States, and that this respondent has acted strictly within the scope of his jurisdiction.
“And that counsel for plaintiffs, although a resident of Natchez, and has been for more than 30 years a counselor of this court, and of the Circuit and Supreme Courts of the United States, and has always been, and is now, ready to accept any process directed to his clients, and to respond thereto, and that the plaintiffs are the proper parties to be heard on a motion of this character. But that if respondent is to adduce the law in support of his rulings, he finds no authority whatever for the contention of the defendants that it is his duty, or in his power, to deny to the plaintiffs their constitutional right to a trial and judgment in his court until' a decree of the federal court may have been affirmed or reversed, or may have acquired the effect of res judicata by the lapse of the delays for appeal. That, to the contrary, he finds that it is the settled jurisprudence of this court, and of the Supreme Court of the United States, that a defendant who objects to the jurisdiction in personam must plead in abatement, and that if he pleads in bar he waives the plea and accepts the jurisdiction, and that the plea of lis pendens must be filed in limine, and is waived by pleading to the merits.
“That the defendants had full knowledge of the pendency of the suit in the federal court, and if, with that knowledge, they appeared and pleaded to the merits in the state court, they waived their right, if any they had, to object to the jurisdiction of the state court because of the pendency of the proceedings in the federal court. But that if said plea did not come too late, it is settled jurisprudence that there is no lis pendens between the courts of the state and the courts of the United States, and that the pendency of the suit in the one court does not preclude the prosecution of the same in the other court. Hampton v. Barrett, 9 La. 336; Id., 12 La. 159; Wright v. White, 14 La. Ann. 583; Mix v. His Creditors, 39 La. Ann. 626, 2 South. 391; State v. New Orleans & N. E. R. Co., 42 La. Ann. 11, 7 South. 84; Bourgeois v. Jacobs, 45 La. Ann. 1310, 14 South. 68; Stanton v. Embrey, 93 U. S. 548, 23 L. Ed. 983; Mutual Life Ins. Co. v. Harris, 96 U. S. 588, 24 L. Ed. 737; Gordon v. Gilfoil, 99 U. S. 168, 25 L. Ed. 383; Huntington v. Laidley, 176 U. S. 668, 20 Sup. Ct. 526, 44 L. Ed. 630; Bryar v. Campbell, 177 U. S. 649, 20 Sup. Ct. 794, 44 L. Ed. 926.
“There is no authority to be found in the opinions of either this court or the Supx’eme Court of the United States for such a stay of proceeding's, and as said by the Circuit Court of Appeals for the Eighth Circuit, in the latest case of Barber Asphalt Co. v. Morris, 132 Fed. 955,[1] 67 L. R. A. 761, the plaintiffs have a constitutional right to prosecute their suit at the same time in both courts, and to have the independent opinion and judgment of the judges of both courts upon the questions presented by their controversies, at least until those questions have become res judicata, and that the effect of such order would be to stay proceedings until they would in all probability be futile, and the plaintiffs would be estopped by *781 the final judgments of other courts from any trial of their controversy upon the merits in the courts of the state, and that such an order would prevent both the independent adjudication of the questions by respondent’s court and the review of that adjudication by this court, and would thus destroy or greatly impair the appellate jurisdiction of this court; that the proper time for such an order to prevent a threatened conflict of jurisdiction between the state and federal courts is not before the rendition of the judgment, but after the judgment and before a seizure of the property under it. Williams v. Neely, 134 Fed. 1, 67 C. C. A. 171, 69 L. R. A. 232, in which the court said, wherever one court secures the custody of specific property, the object of a suit in another court, the latter action should proceed until the custody of the property is required, and then be stayed until the proceedings in the court which has obtained the prior custody are concluded. But in this case, as shown by the order denying the petition for rehearing, the proceedings in the federal court are concluded, and, as the decree of that court has dismissed the bill, there can be no possible conflict of jurisdiction.
“That, so long as the issues in the suit in the federal court have not been finally adjudged, the plaintiffs have a right to their hearing and decision in the state court. That the power is vested in the state court, and the duty is imposed upon it — a duty which it may not lawfully renounce or avoid — to proceed with all convenient speed to try and determine by the exercise of its own independent judgment the controversy between the parties. Boatmen’s Bank v. Fritzlen, 135 Fed. 666, 68 C. C. A. 288. That, if the decree of the federal court dismissing the bill is final, that court has performed its function, and the onlv cmestion, as in Bryar v. Campbell. 177 U. S. 649, 20 Sup. Ct. 794, 44 L. Ed. 926, is of the effect to be given to its decree, and as that decree is not pleaded as res judicata, and has not the force of the thing adjudged by the law of the state, the state court cannot consider it. That the Supreme Court of the United States held, in Huntington v. Laidley, 176 U. S. 679, 20 Sup. Ct. 526, 44 L. Ed. 630, that the question whether the proceedings in the state court afford a defense either by way of res judicata, or because of any control acquired by the state court, over the subject-matter, was not a question affecting the jurisdiction of the federal court, but was a question affecting the merits •of the cause, and as such to be tried and determined by the court in the -exercise of its jurisdiction.
“That your respondent is unable to say, and is not called on to say, whether the plaintiffs desire to have the final judgment of this court within the year, so as to avoid the necessity for an appeal to the United States Supreme Court; but if such be their intention, it is their right, .and respondent knows of no power or authority in him or in his court to deny to the plaintiffs their legal and constitutional rights because it may disappoint the aims of the defendants to escape the jurisdiction of this honorable court.
“That as this respondent understands the case from the record, and from the statements of counsel on the argument, the plaintiffs, after the submission of the cause in the federal court on April 4, 1006, became satisfied that, as one of the removing defendants was a citizen and resident of the state, the federal court had never acquired jurisdiction, and as they did not wish to proceed further in the case with the knowledge that the Supreme Court of the United States would, of its own motion, remand the case back to the state court, concluded to abandon the case and to institute a new suit; but as they did not care to lose the costs of the suit in the federal court, instead of having the cause dismissed without prejudice, filed a motion to have the case remanded at the cost of defendants, as was their right under the removal act. That the federal court denied the motion to remand, and denied the petition for rehearing, and the plaintiffs have one year within which to prosecute their appeal to the Supreme Court. And that under the circumstances the question submitted is whether the proceedings shall be stayed and the plaintiffs compelled to wait until the question of jurisdiction shall have been finally determined, or whether the two cases shall be proceeded with pari passu.
“That as there is no lis pendens between the courts, and as the decree of the federal court does not operate res judicata, and as there can be no possible conflict as to the possession of the res, this respondent knows of no rule of law, and no principle of equity, and no doctrine of comity which authorizes him to deny to the plaintiffs-their constitutional rights to a trial and judgment in his court and to an appeal to this court.”
Relators filed, in this court, for the purpose of showing, as they say, all the facts indisputably, a transcript of the record in the United States Court for the Western district of Louisiana, in the case of B. Pendleton Ferriday et al. v. Middlesex Banking Co., and a transcript of the second case having the same style on the docket of the Tenth judicial district court for Concordia parish. We do not think under such circumstances that it is necessary that the oath of the district judge should be attached to his answer. Code Prac. art. 848, and authorities thereunder cited.
We do not understand relators to claim that a technical writ of prohibition should issue to the district judge, on the -ground that the Tenth judicial district court for Concor *783 clia has no jurisdiction over the second suit referred to. They call upon us to exercise the authority conferred upon the court by article 94 of the Constitution, of issuing remedial writs other than those specifically mentioned, in that article, and “stay the proceedings in the court of Concordia in the second suit until the final disposition on appeal of the case of Pendleton Ferriday et al. v. Middle-sex Banking Co. et al., of the docket of the Circuit Court of the United States for the Western district of Louisiana, or until the final delay for appeal in said cause has elapsed.”
The special features of this case which have attracted our attention are that the defendants pleaded exceptions of no cause of action and prescription in the second case, subsequently pleaded to the merits, and, after a motion to stay had been overruled, finally submitted a written agreement by which it was stipulated that the case should be first tried upon the question of title, and if the court held that the plaintiffs had been divested of title, either by the foreclosure sale, or by the conveyance executed by J. C. Ferriday to the Farm Land Company in February, 1895, which might be either a fee-simple or a pignorative security, the court should render judgment rejecting the plaintiffs’ demand, but that if the court held that the plaintiffs had title the court should proceed for the purposes of an accounting of the debt and interest, and of the rents and revenues, and a partition and distribution of the proceeds; that the case was tried under that agreement, and was submitted to the court for consideration, and that when matters were in that condition defendants filed a second motion for a stay of proceedings, which the court overruled.
To these facts must be added the further one that the property has been in the custody or possession of neither court at any time, but has been constantly in the possession of the defendants and still is so.
We think it appears from relators’ pleadings that the rights of parties had not become legally fixed when the last motion to stay was- filed, and that they will not be until the delay for an appeal from the judgment of the United States court has elapsed. Each side was standing upon its exact legal rights until they should be finally established, and we are asked, before that condition of things, has been reached, to actively interpose the authority of the court in behalf of one of the litigants, and change the existing legal situation in order to permit it to reach a fixed status. Were we to take action, we would have to determine collaterally, and in the absence of parties vitally concerned in our action, that relators, by their conduct in going into the second suit and acting as they did, occupy the same position which they might have had they taken no part in that suit. This we are not prepared to do as matters stand. We do not apprehend that there will be any clash between the United States and the state courts. Relators have constructed a record in the second suit which will disclose the rights of the parties litigant on an appeal from any judgment which the district court for Concordia may render. Relators’ rights will not be destroyed by our leaving matters to take their legal course. .They will have remedies at hand.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the orders hereinbefore rendered be, and the same are, hereby set aside and recalled, and it is hereby ordered, adjudged, and decreed that the application of relators is hereby denied and refused.
LAND, J. I concur in the decree.
See dissenting opinion of BREAUX, C. J., 43 South. 408.

 66 C. C. A. 55.