206 So.2d 500

TRANSAMERICA INSURANCE COMPANY et al.

v.

WHITNEY NATIONAL BANK OF NEW ORLEANS.

No. 48667.

Jan. 15, 1968.

Rehearing Denied Feb. 19, 1968.

Malcolm L. Monroe, Walter J. Suthon, III, Richard P. Wolfe, Monroe & Lemann, New Orleans, for relator.

R. Emmett Kerrigan, Marian Mayer Berkett, Deutsch, Kerrigan & Stiles, New Orleans, for respondents.

SUMMERS, Justice.

In September 1962 Whitney National Bank of New Orleans made a series of loans aggregating $3,402,320 to Allied Crude Vegetable Oil Refining Corporation of Bayonne, New Jersey. The notes representing the loan were made payable in New Orleans. As security therefor, Allied Crude delivered warehouse receipts issued by American Express Warehousing Ltd. and others for over 40,000,000 pounds of soybean oil purportedly stored in Bayonne, New Jersey. When the notes were not paid at maturity, the bank looked to its collateral and found that the amount of oil in the warehouses was negligible, being entirely insufficient to cover the amount of the indebtedness remaining unpaid which Whitney estimates to be $2,618,310.27.

Transamerica and the other insurance companies, who are respondents herein, had, prior to the foregoing transaction, on January 1, 1960, issued to Whitney in New Orleans, a $5,000,000 "Bankers Blanket Bond"; the bond and the rates therefor having been approved by the Louisiana Rating Commission.

On November 9, 1966, after its loss, Whitney filed suit against the Insurers in the United States District Court for the District of New Jersey, seeking recovery on the "Bankers Blanket Bond." The suit was based upon the loss sustained by Whitney as a result of taking the warehouse receipts issued by American Express Warehousing, Ltd. and others, as security for the indebtedness of Allied Crude. Whitney alleged in its New Jersey complaint that no warehouse had ever been established and no commodities had been received by the warehouseman and that therefore the receipts were counterfeited.

Clause "E" of the bond, relied upon by Whitney to provide coverage for the loss, provides:

"Any loss through the Insured's having * * * purchased, or otherwise acquired, accepted or received * * * any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity, or raised or otherwise altered or lost or stolen, or through the insured's having in good faith and in the course of business, guaranteed in writing or witnessed any signature, * * *"

The United States Third Circuit Court of Appeals, in whose jurisdiction Whitney has filed its New Jersey action, has accepted the minority view of the law which would give Whitney coverage under the bond;[1] whereas the majority view would not.[2] No Louisiana Court has yet passed upon this question.

Almost a month after the filing of Whitney's suit, on December 5, 1966, the Insurers brought a declaratory judgment ac-

1. United Pacific Insurance Company v. Idaho First National Bank, 378 F.2d 62 (9th Cir. 1967); Fidelity Trust Co. v. American Surety Co. of New York, 268 F.2d 805 (3d Cir. 1959).
2. Exchange National Bank of Olean v. Insurance Company of North America, 341 F.2d 673 (2d Cir. 1965) cert. denied 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1965); First National Bank & Trust Company of Oklahoma City v. United States Fidelity & Guaranty Company, 347 F.2d 945 (10th Cir. 1965); Liberty Na-

tional Bank & Trust Company of Louisville v. National Surety Corp., 330 F.2d 697 (6th Cir. 1964); North Carolina National Bank v. United States Casualty Co., 317 F.2d 304 (4th Cir. 1963); First National Bank of Memphis v. Aetna Casualty & Surety Co., 309 F.2d 702 (6th Cir. 1962); First National Bank of South Carolina of Columbia v. Glens Falls Insurance Co., 304 F.2d 866 (4th Cir. 1962); State Bank of Poplar Bluff v. Maryland Casualty Co., 289 F.2d 544 (8th Cir. 1961); United States Fidelity &

tion in the Civil District Court for the Parish of Orleans, seeking a declaration that the bond did not cover Whitney's loss. Whitney promptly filed a motion to dismiss the declaratory action as a misuse of the declaratory judgment procedure, in view of the previously instituted and presently pending New Jersey proceeding, or, alternatively, to stay the proceedings in New Orleans pending the outcome of the New Jersey litigation. Whitney further sought to establish that its witnesses were in New Jersey and New York and the federal court there was the most convenient forum.

Thereafter, in the New Jersey proceedings, the Insurers filed motions to dismiss or, in the alternative, that the case be transferred to the Eastern District of Louisiana or stayed in favor of the Louisiana action. The record does not disclose any disposition of these motions by the New Jersey Court.

In the Orleans Parish Court, the Judge denied Whitney's motion to dismiss or stay the proceeding there; whereupon Whitney applied to the Court of Appeal for writs which were denied. Upon application to this Court, we granted writs to review the trial court action.

■ The jurisdiction of the state and federal courts over the matter is concurrent and a determination of the question by either court may be pled as a bar in the proceedings had in the other court.

Although the question of good faith is not involved, as the courts have repeatedly stated that the exercise of legal rights in the selection of the forum does not reflect upon the good faith of the party bringing the suit, the case does present what appears as an unseemly scramble between the attorneys as to which court should hear and determine the case. Mutual Life Insurance Co. of New York v. Brannen, 31 F.Supp. 123 (S.D.Iowa 1940); 6A Moore's Federal Practice § 57.08(5).

■ Generally speaking, in situations of this kind, the pendency of another action involving the same set of circumstances has often been determinative. And courts generally will either dismiss or stay a subsequent petition for a declaratory judgment. 6A Moore's, Federal Practice Sec. 57.08 (6); Borchard, Declaratory Judgments (2d ed. 1941) 298, 392, 350–354, 655–661, 817–820. Louisiana follows this rule. La.Code Civ.P. art. 532; Burton v. Lester, 227 La. 347, 79 So.2d 333 (1955); Ferriday v. Middlesex Banking Co., 118 La. 770, 43 So. 403, 1907 (Rehearing).[3]

■ Here the action for relief in the New Jersey Court will necessarily settle

Guaranty Co. v. First National Bank of Ft. Morgan, 147 Colo. 446, 364 P.2d 202 (1961); First American State Bank v. Aetna Casualty & Surety Co., 25 Wis.2d 190, 130 N.W.2d 824 (1964).

3. Burton v. Lester, supra, although in some respects legislatively overruled by Article 1871 of the Code of Civil Procedure, still stands for the proposition that whether declaratory judgments relief will be

the identical issue raised in the declaratory action, and the parties are the same parties. There appears to be no sound reason to permit this declaratory action for it promotes multiplicity of suits, which are expensive for the litigants and an unnecessary duplication of judicial time and effort generally to be abhorred by the courts.

The Insurers argue, however, that the bank's claim requires an interpretation of the bond issued by the respondents. That is, it requires construction of Clause "E" and, since the bond is a contract executed in Louisiana between parties in Louisiana approved by the Louisiana Rating Commission, subject to its regulation and control, which may affect Louisiana insurance rates, there can be no doubt that the law of Louisiana governs the interpretation of the contract. And, the Insurers assert, since the issue at hand is yet undecided by the Louisiana courts, the Louisiana courts should take this case and declare the Louisiana law before any other court.

This argument does not impress us. The question before the court is what are the rights and obligations of the parties under the contract at issue and not rate structure in Louisiana. Louisiana rate structure is irrelevant to a determination of such rights and obligations. In any event, the effect

upon the rate structure will be the same whether there is a judgment of a Louisiana court or a Federal District Court in New Jersey.

Although it might seem preferable for Louisiana courts to determine this question in the first instance, the contract at issue is a standard form of "Bankers Blanket Bond" employed throughout the United States. There is no important State law question involved, and particularly none on which it is desirable to obtain a decision of the Louisiana courts. Most of the litigation over the meaning and coverage of the standard form of Bankers Blanket Bond at issue in this case has been in federal courts. See footnotes 1 and 2, supra.

On the other hand, the testimony of the witnesses in New Jersey and New York is undoubtedly relevant to the issues in this case for it must be proven whether or not the purported warehouse receipts upon which Whitney relied in making the loans to Allied Crude Oil were issued by a warehouse and, if a warehouse existed, whether or not the oil described in the above-mentioned purported warehouse receipts were ever in that warehouse. The New Jersey Court will undoubtedly permit the attendance of these witnesses with more convenience and less expense.

granted is a matter of judicial discretion to be determined after considering the case on its own peculiar facts and, generally, where there is another suit

pending in the federal courts, Louisiana courts will not entertain a declaratory action.

We feel that the trial court should have stayed the proceedings for declaratory relief until the suit in the Federal District Court in New Jersey is either dismissed or otherwise terminated. The authority for this action is in Article 532 of the Code of Civil Procedure which provides:

"When a suit is brought in a Louisiana court while another is pending in a court of another state or of the United States on the same cause of action, between the same parties in the same capacities, and having the same object, on motion of the defendant or on its own motion, the court may stay all proceedings in the second suit until the first has been discontinued or final judgment has been rendered."

and in the following pronouncement of the Federal Supreme Court:

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. North American Co., 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

For the reasons assigned, the trial of this matter in the Civil District Court for the Parish of Orleans is stayed pending the dismissal or termination of the suit between the same parties involving the same subject matter now pending in the United States District Court for New Jersey.

HAMITER, J., recused.