CIACCIO, Judge.
This is an appeal from the denial of a preliminary injunction to prevent appellee from prosecuting a complaint in a Wyoming state court involving substantially the same parties and the same issues. For the following reasons, we reverse and remand the case to the trial court.
Appellant, Cajun Electric Power Cooperative, Inc., is a non-profit generation and transmission rural electric cooperative corporation organized pursuant to Louisiana law, with its principal place of business in East Baton Rouge Parish. Cajun Electric generates and supplies wholesale electricity to its thirteen member distribution cooperatives throughout the state of Louisiana.
Appellant, Western Fuels Association, Inc., is a non-profit cooperative corporation organized under the laws of the State of Wyoming and having its principal place of business in the District of Columbia. Western Fuels is owned by its member electric utilities, including Cajun Electric, and is engaged in the business of supplying fuel to the electric generating stations of its members.
Appellee, Triton Coal Company, is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Wyoming. Triton is authorized to do business in Louisiana, and its registered office is located in Orleans Parish.
In 1985 Triton and Western Fuels entered into a contract for the sale of coal from Triton to Western Fuels for use in Cajun Electric’s Big Cajun Number Two generating facility in Pointe Coupee Parish, Louisiana. Although not a party to the contract, Cajun Electric was the guarantor of Western Fuels’ performance of the contract. In 1990, a dispute arose between the parties concerning the interpretation of the price of certain coal specified in the contract.
Under the terms of the contract, Cajun Electric required that all coal supplied have an average heat content of 8600 BTU's per pound. To meet this requirement, Triton provided coal from both its Buckskin mine in the Powder River Basin of Wyoming and from other mines in the Eastern United States which the parties refer to as eastern alternative source coal. Coal from the Buckskin mine is delivered to Cajun Electric via Burlington Northern (BN) Railroad, by a contractual arrangement between BN and Cajun Electric. Although the eastern alternative source coal was not shipped through the BN Railroad, the 1985 BN rail rate was incorporated by the parties into the contract to determine the ultimate delivery price of the eastern coal.
The impetus for the dispute between the parties occurred when Cajun Electric and Western Fuels were successful in renegotiating the BN rail rate for the supply of the Buckskin mine coal. Cajun Electric and Western Fuels asserted that the price of the eastern alternative source coal should be renegotiated since the rail rate for transporting the Buckskin mine coal to Louisiana had been reduced. Triton disagreed, contending that based on the terms of the contract, the reduction in the rail rate obtained by Cajun Electric and Western Fuels had no effect on the contract price of coal provided by Triton, and that the price of the eastern alternative source coal was based on a fixed rail rate specified in the 1985 contract.
As a result of this conflict, Cajun Electric and Western Fuels began remitting only a portion of the price for coal which was invoiced by Triton, as they believed that the amount paid was the only amount owed under the contract. The difference between the amount invoiced by Triton and the amount paid on these invoices is approximately $1,000,000.
On March 19, 1991, Cajun Electric and Western Fuels filed a Petition for Declaratory Relief in Civil District Court for the Parish of Orleans against Triton alleging *816 breach of contract and seeking the following relief:
1. A declaratory judgment, in favor of plaintiffs and against defendant, declaring that the price of non-powder River Basin Alternate Source Coal shall be adjusted to reflect the 1991 rate renegotiated between Cajun Electric Power Cooperative, Inc. and its rail carrier which lowered the rail rates of delivering coal to Cajun Electric; and
2. A declaratory judgment that the renegotiation under the terms of Article 7.3 of the Base Contract between Western Fuels Association and Triton Coal Company, is to include non-Powder River Basin Alternate Source Coal and that the price of coal established through the bid and renegotiation process of Article 7.3 shall be the price of all coal Triton Coal is obligated to sell under the Base Contract at a minimum BTU rating of 8600 BTU’s per pound.
In response to this petition, on April 5, 1991, Triton Coal Company filed a Motion for Extension of Time with which to answer and on August 6, 1991 defendant ultimately filed an Answer and Reconventional Demand against plaintiffs Cajun Electric and Western Fuels for the unpaid amounts of the invoices and for a declaration that the contract does not provide for a readjustment of the coal price based on the renegotiation of the rail rate.
However, on March 29, 1991, prior to filing their motion for extension of time, Triton commenced an action in the Sixth Judicial District, in and for Campbell County, State of Wyoming naming as defendant Western Fuels Association. In its complaint in Wyoming, Triton asserted six claims of relief:
1. Whether there is a breach of contract because of Western Fuels’ failure to pay in full invoices issued by Triton;
2. Whether the contract permits a change in the pricing formula because of a change in the rail rate portion of those formulas;
3. To enforce the bid solicitation process as provided for in the contract;
4. To determine the application of contract pricing based on Rail Cost Adjustment Factor (“RCAF”) as provided for in the 1985 contract;
5. Whether threats by Western Fuels and Cajun to cancel its contract with Triton constitutes bad faith performance under that Contract; and
6. That damages be paid to Triton as a result of conduct of Western Fuels.
Thereafter, on May 9, 1991, plaintiffs filed a Petition for Injunctive Relief in Civil District Court seeking to enjoin Triton from proceeding in the action filed in Wyoming as they contended it was duplicative of the Louisiana suit previously pending. The matter was submitted on affidavits to the court on June 14, 1991 and on June 26, 1991 the trial court denied the petition for injunctive relief. This appeal follows.
On appeal, Cajun Electric and Western Fuels argue that the trial court’s denial of the preliminary injunction was manifestly erroneous. They contend that the issues addressed in the Louisiana suit are identical to those asserted in the subsequently filed Wyoming suit, and based on the longstanding jurisprudential policy to avoid the multiplicity of suits, Triton should have been restrained by the court from proceeding with a duplicate suit in a sister state. We agree.
Louisiana jurisprudence clearly supports the action of a trial court in appropriate circumstances in enjoining the prosecution of a suit subsequently filed in another state involving the same controversy. Transamerica Insurance Company v. Whitney National Bank, 251 La. 800, 206 So.2d 500 (1968). Further, it is well-settled in Louisiana law that courts abhor a multiplicity of lawsuits to settle a single issue as such actions are expensive for the litigants and result in an unnecessary duplication of judicial time. Bell v. Travelers Indemnity Co., 500 So.2d 828, 831 (La.App. 1st Cir.1986), writ denied, 502 So.2d 112 (La.1987).
A trial court has broad discretion in the granting or denial of a preliminary injunction, and will not be disturbed on review absent clear abuse of that discre *817 tion. SREF Bon Marche Co. v. D.H. Holmes Co., 572 So.2d 284 (La.App. 1st Cir.1990), writ denied, 576 So.2d 45 (La.1991).
The primary issue presented for our review is whether the trial court has abused its discretion in declining to enjoin Triton from prosecuting its complaint in the Wyoming state court.
On appeal Triton argues that the trial court’s action was proper as issues in the Wyoming suit are not identical to the suit filed by plaintiffs in Louisiana. However, we have carefully reviewed the pleadings filed in both the Louisiana and Wyoming courts and find that both arise out of the same controversy; i.e., the dispute over interpretation of the price adjustment clauses in the 1985 contract. The factual situation addressed in both suits are identical; all of the issues asserted in the Wyoming suit are likewise addressed in the main demand and reconventional demand in the court below. There are no issues asserted in the Wyoming action which would not be addressed by the Louisiana court in the action filed here. Further, we can find no distinction in the relief sought in either suit: both seek to obtain the same result.
Triton further argues that the suits are not duplicative as they do not contain identical parties, citing the fact that Cajun Electric was not named as a party defendant in the Wyoming suit. Cajun Electric was not an indispensable party to the Wyoming suit as it is not a party to the contract but only a third party beneficiary and guarantor. The fact that Cajun Electric was not named in the Wyoming suit is not dis-positive of the issue of whether the suits are duplicative. The failure of Triton to name Cajun Electric as a defendant in the Wyoming lawsuit does not alter the suit’s multiplicity, as the controversy underlying both suits involves identical parties. Both suits seek a declaration as to whether Western Fuels, on behalf of Cajun Electric, may alter the price it pays for Triton’s coal based on the former’s renegotiation of the rail rate charged to Cajun Electric. We conclude that the Wyoming suit is merely a duplicate of the suit filed here.
Triton further argues that the basis for instituting the suit in Wyoming is to prevent Western Fuel’s short payment of Triton’s invoices for coal and to enforce a 1988 judgment previously obtained by Triton in the Wyoming court which ordered Western Fuels to discontinue the short payment of invoices. However, both of these objectives can be obtained in the Louisiana court where the identical suit was filed initially. Western Fuels originally sought this declaratory relief to determine whether it was entitled to adjust the contract price of the coal, and Triton reconvened requesting that Western Fuels be prevented from unilaterally reducing the purchase price and also prayed for the difference of the unpaid amount of the invoices. The Louisiana court has the authority to settle all issues before it, which are the identical ones to those asserted by Triton in the Wyoming suit.
Further, Triton contends that the issues presented by Triton in the Wyoming suit are ongoing from the judgment obtained by Triton in 1988. However, a review of the earlier judgment reveals that although Western Fuels was prevented from unilaterally paying a lower price for coal, there was no dispute in that case regarding the effect of a reduction of the rail rate on the price adjustment clauses in the contract. The present suit and the relief sought therein are distinguishable from the earlier judgment. Nonetheless, the Louisiana court clearly has the authority to give full force and effect to the Wyoming judgment if appropriate. We find no merit in Triton’s argument that the suit is more properly brought in Wyoming on this basis.
We are likewise unimpressed with Triton’s argument that the suit should remain in Wyoming because of the contractual provision that Wyoming law applies to disputes arising out of the contract. The controversy here does not require a determination of complex legal issues which are peculiar to one state. Rather, the issues to be decided involve the interpretation of the contract and the intent of the parties, which are well within the province of the *818 Louisiana court. Further, the Louisiana court has a distinct interest in deciding the issue here. Cajun Electric is a Louisiana corporation which operates its generating plants here in the state. Although the coal which is the subject of the dispute is produced in Wyoming, it is used to generate electricity and is consumed in Louisiana.
Triton next argues that it is not a citizen of Louisiana and should not be subject to an injunction proceeding filed here. Triton argues that it has no employees and no office in Louisiana, and therefore has no actual presence in Louisiana. However, Triton has registered as a foreign corporation authorized to do business in Louisiana and has established an agent for service of process and registered office in the state. Triton has fully complied with the statutory provisions under which a foreign corporation is qualified to do business in Louisiana. As such, it is subject to the jurisdiction of this state for purposes of these injunction proceedings.
Further, any objection Triton has to the exercise of jurisdiction over it by the court below was waived when Triton made a general appearance and sought relief through its answer and reconventional demand. We find no merit in Triton’s argument that it is not subject to Louisiana jurisdiction.
We conclude that the trial court clearly abused its broad discretion in refusing to enjoin Triton from prosecuting the suit in Wyoming. The two suits are clearly duplicative, and permitting both suits to continue only thwarts the legitimate effort to avoid a multiplicity of lawsuits for the benefit of both of the litigants and the courts.
For the reasons assigned, we reverse the judgment of the trial court denying the injunction and the trial court is ordered to enter a preliminary injunction against ap-pellee, Triton Coal Company, enjoining it from proceeding with any further action in the suit entitled Triton Coal Company versus Western Fuels Association, Inc. No. 17762, in the District Court of the Sixth Judicial District in and for Campbell County, State of Wyoming, until this case is finally terminated. We remand the case for further proceedings consistent with this opinion. Appellee is to bear all costs of this appeal.
REVERSED AND REMANDED.