581 So.2d 261 (1990)
MIK-LEE, INC.
v.
CITY OF NEW ORLEANS.
The MISSISSIPPI RIVER BOTTOM COMPANY
v.
CITY OF NEW ORLEANS.
Nos. 90-C-1516, 90-C-1517.
Court of Appeal of Louisiana, Fourth Circuit.
December 5, 1990.
*262 John D. Rawls, New Orleans, for relator.
Kathy Torregano, Deputy City Atty., Eleanor Graham, Asst. City Atty., and William J. Guste, Jr., Atty. Gen., New Orleans, for respondents.
Before WARD, KLEES and WILLIAMS, JJ.
Although the denial of a preliminary injunction is routinely handled on appeal, we elect to use our supervisory power to treat this matter as a writ. We have reviewed the record before us and find no error in the trial court's ruling.
Mik-Lee, the relator in 90-C-1516, owns and operates a gay bar called the Corner Pocket at 940 St. Louis Street in the French Quarter. The Mississippi River Bottom Corporation, the relator in 90-C-1517, owns and operates a gay bar called Mississippi River Bottom at 515 St. Philip Street, also in the French Quarter. Both bars are in an area which is now zoned VCR-1, a historical residential district. The bars are allowed in the VCR-1 zone as pre-existing nonconforming uses; that is, the bars were in existence prior to the enactment of the Comprehensive Zoning Ordinance of 1982.
Both bars offer live entertainment. At the Corner Pocket, the live entertainment has been "boys dancing," which consists of bar patrons dancing and stripping to songs from the bar's juke box. The best dancers are given cash prizes by the bar, and other patrons give tips to the dancers. The "boys dancing" had been taking place on a weekly basis since 1983, and the Corner Pocket advertised it in several gay publications. There also had been "drag shows" at the bar on occasion. No admission was charged to enter the Corner Pocket.
There were also dancing and drag shows at Mississippi River Bottom over the past six years on a weekly basis. The bar also had a piano player for several days of the week and hosted parties twice a year for the Krewe of Petronius, a gay Mardi Gras organization, and hosted benefits for AIDS, all of which featured live entertainment.
Both the Corner Pocket and Mississippi River Bottom were designated as "bars" on their ABO licenses which meant neither could have live entertainment unless an amusement tax was paid to the City and a live entertainment permit obtained. Neither paid the amusement tax, and neither attempted to apply for a permit so they could operate as "nightclubs" at which live entertainment was allowed.
In April and May, 1990, the City's Department of Safety and Permits received two written complaints, one of which was anonymous, about the live entertainment at the Corner Pocket. In early June, 1990, Paul May, the Zoning Administrator, received a visit from Leon Impastato, an architect, and Tom Wood, the owner of several French Quarter bars. On June 15, Mr. May called the Corner Pocket and told the manager, Lee Fetherston, to cease presenting live entertainment. On June 19, the owners of the Corner Pocket filed suit seeking a temporary restraining order, a preliminary and a permanent injunction to bar the City from prohibiting live entertainment. The TRO was issued on June 19, *263 and on June 25, the Corner Pocket supplemented its petition to raise the constitutional issues of discrimination against gays and infringement of the freedom of expression.
The Department of Safety & Permits did not receive any written complaint or notice about the live entertainment at Mississippi River Bottom. On June 15, Mr. May received an application for an occupational license from Mississippi River Bottom which was denied because of a lack of information about Mississippi River Bottom's business operations. When May called Mississippi River Bottom to inform it of the denial, he was told that Mississippi River Bottom was actually seeking a permit for live entertainment. May told Mississippi River Bottom that any live entertainment had to cease but that it could reapply for the live entertainment permit. On June 20, Mississippi River Bottom sought the same relief as Corner Pocket, and a TRO was issued. On June 25, Mississippi River Bottom also filed a supplemental and amending petition raising the same issues of discrimination and infringement of freedom of expression.
On June 28, the trial court held a hearing on Corner Pocket's request for a preliminary injunction. Corner Pocket presented testimony that there is a distinct gay subculture which is centered around the gay bars in the French Quarter. Corner Pocket also presented testimony that the police came into the Corner Pocket to use the bathroom, the telephone, get a soft drink or to look for suspects while the live entertainment took place. Corner Pocket introduced into evidence copies of Impact and Ambush, which were gay publications containing advertisements for "boys dancing" and drag shows at the Corner Pocket and numerous complimentary subscriptions of Ambush which were sent to the Mayor's office and to two City Council members.
The trial court denied Mik-Lee, Inc.'s request for a preliminary injunction holding that because the Corner Pocket was licensed as a bar it could not have live entertainment under the zoning law. The trial court found the zoning ordinance constitutional and that the matter of allowing live entertainment in the area was a legislative matter. The trial court stated that the ordinance did not pick on gay bars because the ordinance was applicable to all bars. The trial court found that although the live entertainment had been going on for many years, the City did not have official notice of it until within the past few months.
The hearing on Mississippi River Bottom's request for a preliminary injunction was held June 29, and no testimony was given. However, Mississippi River Bottom introduced numerous affidavits about the live entertainment and stated that it was advertised in Impact and Ambush, and further introduced evidence that numerous other bars in the immediate vicinity also had live entertainment. The trial court denied Mississippi River Bottom's request for a preliminary injunction without giving reasons.
Both the Corner Pocket and Mississippi River Bottom complain the trial courts erred in refusing to grant the preliminary injunctions because the City had notice of the alleged zoning violations more than two years prior to Paul May, the City Zoning Administrator, ordering both bars to cease presenting live entertainment. They also argue that the zoning ordinance discriminates against gay bars since it allows live entertainment only in the first seven blocks of Bourbon Street which is almost exclusively heterosexual, or "straight." They further argue the zoning ordinance violates their freedom of expression in that the gay community expresses itself through dancing and drag shows in gay bars.
It should be noted that under C.C.P. art. 3612 an appeal may be taken as a matter of right from an order or judgment relating to a preliminary injunction. In Fabacher v. Hammond Dairy Co., Inc., 389 So.2d 87 (La.App. 4th Cir.1980), this court stated that it had both appellate and supervisory jurisdiction in injunction proceedings. However, in Acme Mortgage Co., Inc. v. Cross, 445 So.2d 1239 (La.App. 4th Cir.1983), writ denied 438 So.2d 1108 (La.1983), this court held that supervisory writs were inappropriate in a case involving the denial of a preliminary injunction and *264 that the remedy was to appeal the denial of the injunction. But, in the concurring opinion to the denial of writs by the Supreme Court, Justices Calogero and Lemmon stated that supervisory writs were appropriate to seek review of the denial of injunctive relief.
In this case, the better course is to follow Fabacher rather than Cross since the complete record is already here. Moreover, Article 3612 uses the word "may" rather than "shall" indicating that an appeal is permitted, but not mandated, to seek review of judgments relating to injunctions. R.S. 1:3; C.C.P. art. 5053. The language of Article 3612 does not appear to foreclose the right to seek supervisory review of such judgments.
R.S. 9:5625A provides, in part:
All actions, civil or criminal, created by statute, ordinance or otherwise * * * which may be brought by parishes, municipalities or their instrumentalities or by any person, firm or corporation to require enforcement of and compliance with any zoning restriction * * * imposed by any parish, municipality or their instrumentalities, and based upon the violation by any person, firm or corporation of such restriction or regulation, must be brought within two years from the first act constituting the commission of the violation * * * and provided further that with reference to violations of use regulations all such actions, civil or criminal, * * * must be brought within two years from the date that the parish, municipality and their properly authorized instrumentality or agency if such agency has been designated, first had been actually notified in writing of such violation.
Relators contend that evidence presented in the trial court established that it was widely known that live entertainment had been taking place at the Corner Pocket and Mississippi River Bottom for several years. Therefore, the City is precluded from enjoining or preventing the two bars from presenting live entertainment. They cite Dudenheffer v. City of New Orleans, 482 So.2d 175 (La.App. 4th Cir.1986), as support.
In Dudenheffer, the City obtained an injunction preventing the plaintiff from operating a wholesale seafood business in a Non-Urban District which was zoned for retail business only. The plaintiff started the business in 1963, and it continued to expand. In 1984, the City sought to enjoin its operation. The plaintiff argued the City had long known of the wholesale business based on tax assessments and his applications to the City in 1980 and 1981 for a permit to upgrade his electrical service and the consequent summoning of inspectors from the City for that purpose. This court held that the plaintiff's written contacts with the City in 1980 and 1981 coupled with the visible and obvious nature of the use of the property barred the City from enjoining the wholesale business under R.S. 9:5625 because the City had actual knowledge of the nonconforming use.
Relators provided adequate proof that the live entertainment held at these bars was highly visible and well publicized. However, they failed to submit evidence showing that the City received actual notice. The trial court found that the numerous posters, flyers, subscriptions and observations by police that were working their beat did not constitute proper notice that live entertainment was offered by the bars. We agree, this simply does not qualify as proper notice to the appropriate agent, the City of New Orleans.
Because neither relator has applied for and been denied a live entertainment license, allegations of discrimination are unfounded.
We also believe the trial court was correct when holding the zoning ordinance constitutional, that it did not infringe on the self expression of gays, and that the matter of allowing live entertainment was a legislative matter.
Although relators have presented evidence indicating the ordinance was selectively applied, we cannot conclude the trial court committed manifest error by finding the ordinance was applicable to all bars in *265-273 the City and that gay bars were not singled out for discrimination.
WILLIAMS, J., concurs with reasons.
WILLIAMS, Judge, concurring.
I would deny relators' writ application, without addressing its merits.
Supervisory review is inappropriate following the denial of injunctive relief. Relators' remedy is to appeal the denial of their requests for preliminary injunctions. Acme Mortgage Co., Inc. v. Cross, 445 So.2d 1239 (La.App. 4th Cir.1983), writ den., 438 So.2d 1108 (La.1983).