| | | |
|---|---|---|
| **DEMETRIC M. MERCADEL** | * | **NO. 2022-C-0242** |
| **AND MICHAEL G. BAGNERIS** | | |
| | * | |
| **VERSUS** | | **COURT OF APPEAL** |
| | * | |
| **NEW ORLEANS JAZZ &** | | **FOURTH CIRCUIT** |
| **HERITAGE FESTIVAL AND** | * | |
| **FOUNDATION, INC.** | | **STATE OF LOUISIANA** |

* * * * * * *


APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-02147 C/W 2022-02149, DIVISION "J"
Honorable D. Nicole Sheppard
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Paula A. Brown, Judge Dale N. Atkins, Judge Pro
Tempore Lynn M. Luker)


Richard C. Stanley
Eva J. Dossier
Christian S. Chaney
Brandon A. Naquin
STANLEY, REUTER, ROSS, THORNTON & ALFORD, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112


COUNSEL FOR PLAINTIFF/RESPONDENT, Demetric M. Mercadel


John O. Pieksen, Jr.
BAGNERIS, PIEKSEN & ASSOCIATES, LLC
935 Gravier Street, Suite 2110
New Orleans, LA 70112


COUNSEL FOR PLAINTIFF/RESPONDENT, Michael G. Bagneris


Benjamin M. Chapman
LAFLEUR & LABORDE, LLC
6160 Perkins Road, Suite 225
Baton Rouge, Louisiana 70808

Hilton S. Bell
James K. Irvin
LAFLEUR & LABORDE, LLC
612 Andrew Higgins Boulevard, Suite 1001
New Orleans, Louisiana 70130

      COUNSEL FOR DEFENDANT/RELATOR, New Orleans Jazz & Heritage Festival and Foundation, Inc.

**WRIT GRANTED; JUDGMENT REVERSED**
**April 20, 2022**

DNA

PAB

LM

This is a civil dispute. Relator, the New Orleans Jazz & Heritage Festival and Foundation, Inc. (hereinafter "NOJHFF"), seeks review of the trial court's April 13, 2022 judgment, which granted the "Applications/Motions for Preliminary Injunction" (hereinafter "Motions for Preliminary Injunction") filed by Respondents, Demetric M. Mercadel (hereinafter "Ms. Mercadel") and Michael G. Bagneris (hereinafter "Mr. Bagneris"). For the following reasons, we grant the writ and reverse the trial court's judgment.

## STATEMENT OF THE CASE

NOJHFF is a non-profit corporation that is organized and doing business in the Parish of Orleans, State of Louisiana. The mission of NOJHFF "is to promote, preserve, perpetuate and encourage the music, culture and heritage of communities in Louisiana through festivals, programs, and other cultural, educational, civic, and economic activities." As part of that mission, NOJHFF "plans, promotes and stages" the New Orleans Jazz & Heritage Festival (hereinafter "Jazz Fest"), which is held annually.[1] Ms. Mercadel and Mr. Bagneris are both past presidents of

---

[1] While NOJHFF typically holds Jazz Fest every year, the COVID-19 pandemic resulted in the cancellation of Jazz Fest in 2020 and 2021.

NOJHFF: Ms. Mercadel served as president from 2014-2016, and Mr. Bagneris served as president from 2000-2002.

Previously, NOJHFF provided past presidents with "perquisites of service."[2] These perquisites included:

(a)   seventy (70) free tickets to Jazz Fest;
(b)   the option to buy one-hundred (100) additional tickets at half price;
(c)   four (4) laminates;[3]
(d)   six (6) satins;[4]
(e)   one (1) parking pass;[5]
(f)   the ability to purchase posters at a discount; and
(g)   four (4) wristbands to access the Board of Directors' room.[6]

The above items are hereinafter collectively referred to as "perquisites." However, after the 2019 Jazz Fest, NOJHFF decided to discontinue the practice of giving the perquisites to past presidents "to continue to operate in accordance with best practices for non-profit corporations." On July 16, 2021, Ms. Mercadel and Mr.

_____

[2] In their filings with this Court, NOJHFF uses the phrase "perquisites of service" while Ms. Mercadel and Mr. Bagneris use the phrase "Consideration and Benefits." For consistency throughout, this Opinion will use the word "perquisites."

[3] In his testimony during the April 13, 2022 hearing, which is discussed more fully throughout the Opinion, Mr. Bagneris described the laminates as "pass cards that would allow [one] to pass into the festival" and "allow [one] to get on the stage which was a great benefit."

[4] In his testimony during the April 13, 2022 hearing, Mr. Bagneris explained that the satins "allow [one] to obtain a closer view of the stage" and "to get a pass to the front of the stage."

[5] In his testimony during the April 13, 2022 hearing, Mr. Bagneris stated that the parking pass allowed one to park "right across the street from the gate that enters into [Jazz Fest]."

[6] In his testimony during the April 13, 2022 hearing, Mr. Bagneris explained that the wristbands "allowed [access] into the board room which was actually the best room on [] the grounds mainly because [one did not] have to wait in those long[] lines to use the restroom."

Bagneris received notification of the discontinuation of the practice and the reasons therefor.[7]

On March 14, 2022, Ms. Mercadel and Mr. Bagneris each separately filed a "Verified Petition for Specific Performance, Injunctive Relief, and Declaratory Judgment" (hereinafter collectively "Petitions") in the Civil District Court for the Parish of Orleans.[8] In their Petitions, Ms. Mercadel and Mr. Bagneris alleged, in pertinent part, that NOJHFF, "as an inducement for their service and support," offered the perquisites as "consideration . . . for their service" and that they "expected to receive [the perquisites] in the future . . . as an inducement for their service and support." They argued that they had "accepted that offer by meeting those conditions through their service as President." Ms. Mercadel and Mr. Bagneris asserted that NOJHFF had thus breached its contract with them and, alternatively, had acted in bad faith by discontinuing the practice of giving the perquisites to past presidents. Additionally, under the theory of detrimental reliance, Ms. Mercadel and Mr. Bagneris argued that "[i]n justifiable reliance of that representation [that past presidents would continue to receive the perquisites]," they "devoted countless hours of [] time and [] personal resources to promoting the mission of the NOJHFF . . . ." In sum, they prayed that the trial court issue an injunction to compel NOJHFF to provide them with the perquisites.

---

[7] NOJHFF did not hold Jazz Fest in 2020 and 2021 due to the COVID-19 pandemic. Jazz Fest is scheduled to be held April 29-30, May 1, and May 5-8, 2022; thus, this year presents the first time that Jazz Fest will occur since NOJHFF's discontinuation of perquisites for past presidents. Ms. Mercadel and Mr. Bagneris last received the perquisites in 2019.

[8] Though filed separately, Ms. Mercadel's and Mr. Bagernis' Petitions are virtually identical.

3

Subsequently, on March 23, 2022, Ms. Mercadel filed a Motion for Preliminary Injunction; and Mr. Bagneris filed a nearly identical Motion for Preliminary Injunction on March 24, 2022. Therein, Ms. Mercadel and Mr. Bagneris requested that the trial court "enjoin[] [NOJHFF] from breaching its contract" and "order[] [NOJHFF] to provide [them] with" the perquisites. On March 30, 2022, the trial court signed a Rule to Show Cause, which provided, in pertinent part, that the trial court would "conduct a hearing and receive evidence on April 8, 2022, regarding Ms. Mercadel's []Motion for Preliminary Injunction." However, on April 6, 2022, NOJHFF filed a "Motion to Continue and Reschedule Preliminary Injunction Hearing" (hereinafter "Motion to Continue"), and the trial court ultimately rescheduled the hearing for April 13, 2022, so that Ms. Mercadel's and Mr. Bagneris' Motions for Preliminary Injunction could be addressed at the same hearing.[9]

On April 13, 2022, the trial court held a hearing on Ms. Mercadel's and Mr. Bagneris' Motions for Preliminary Injunction. At the hearing, the parties were present and represented by counsel; counsel for the parties presented argument; the trial court admitted evidence into the record; Ms. Mercadel and Mr. Bagneris testified; and counsel for NOJHFF cross-examined Ms. Mercadel and Mr. Bagneris. During his testimony, Mr. Bagneris explained that he was "asking [the trial] [c]ourt [] to recognize that there was an implied contract between [NOJHFF] and the past presidents" and to order NOJHFF to provide him with the perquisites. Mr. Bagneris testified that while some of perquisites, such as the tickets and posters, hold monetary value, he and the other past presidents would be

_____

[9] On March 31, 2022, Mr. Bagneris filed an "Ex Parte Motion and Order with Incorporated Memorandum in Support to Transfer and Consolidate." Thereafter, the trial court consolidated Ms. Mercadel's and Mr. Bagneris' cases.

4

"prevent[ed] [] from being able to enjoy those tickets the way [they] could as past presidents" because the perquisites "embellish[] the admission" and "how [they] are able to enjoy [the] festival." Additionally, Ms. Mercadel and Mr. Bagneris testified that they could not purchase some of the perquisites, namely the laminates, the satins, the parking pass, and the wristbands because those are unavailable to the general public. The same day of the hearing, the trial court issued a judgment, which granted Ms. Mercadel's and Mr. Bagneris' Motions for Preliminary Injunction. Further, the trial court's judgment ordered NOJHFF to provide Ms. Mercadel and Mr. Bagneris with the perquisites.

After the trial court issued its judgment, on April 14, 2022, NOJHFF filed with the trial court a "Notice of Intent to Apply for Expedited Supervisory Writ and Request for Stay" (hereinafter "Notice of Intent") and a "Motion for Suspensive Appeal of Preliminary Injunction and Request for Expedited Consideration" (hereinafter "Motion for Suspensive Appeal"). Thereafter, on April 18, 2022, NOJHFF filed the instant Supervisory Writ Application and Request for Expedited Consideration (hereinafter "Writ Application") with this Court. Later that same day, the trial court signed orders granting the Notice of Intent and Motion for Suspensive Appeal. In its Writ Application, NOJHFF argues that the trial court abused its discretion in granting Ms. Mercadel's and Mr. Bagneris' (hereinafter collectively "Respondents") Motions for Preliminary Injunction "absent a showing of irreparable harm" and by "mandating the taking and transfer of NOJHFF's property to [Respondents] via summary proceeding and by extension altering the status quo."

In their Oppositions to the Writ Application, Respondents contend that the trial court correctly determined that they would be irreparably harmed if their

Motions for Preliminary Injunction were denied because the "uniqueness of each Jazz Fest from an artistic and cultural perspective" means that "the loss cannot adequately be compensated in money damages nor measured by a pecuniary standard"; certain portions of the perquisites cannot be purchased by the general public; the discontinuation of the perquisites "imparts a reputational injury by negating and disrespecting the years of service and dedication [of] the Past Presidents"; and the loss of the perquisites "significantly inhibits [Respondents'] ability to promote [NOJHFF] and otherwise engage in charitable and community outreach by providing the [perquisites] to at-need members of the community, senior citizens, and other charitable organizations." Further, Respondents assert that issuance of the injunction via summary proceeding was proper because "[e]ven assuming arguendo that the preliminary injunction issued by the trial court was a 'mandatory injunction,' the trial court had the authority to issue the injunction following the full evidentiary hearing on April 13, 2022." Prior to discussing the merits of the parties' arguments, we address a procedural matter.

## SUPERVISORY REVIEW

As noted, NOJHFF filed with the trial court both a Notice of Intent and Motion for Suspensive Appeal on April 14, 2022; thereafter NOJHFF filed with this Court the instant Writ Application on April 18, 2022. Regarding preliminary injunctions, La. C.C.P. art. 3612 provides, in pertinent part:

> B. An appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction, but such an order or judgment shall not be suspended during the pendency of an appeal unless the court in its discretion so orders.

> C. An appeal from an order or judgment relating to a preliminary injunction must be taken, and any bond required must be furnished, within fifteen days from the date of the order or judgment.

> The court in its discretion may stay further proceedings until the appeal has been decided.

Louisiana Code of Civil Procedure Article 3612 "uses the word 'may' rather than 'shall' indicating that [an] appeal is permitted, but not mandated, to seek review of judgments relating to injunctions." *City of New Orleans v. Benson*, 1995-2436, p. 4 (La. App. 4 Cir. 12/14/95), 665 So.2d 1202, 1204 (citing La. C.C.P. art. 3612; *Mik-Lee, Inc. v. City of New Orleans*, 581 So.2d 261 (La. App. 4 Cir. 1990)). *See also In re Harrier Trust*, 2018-0667, p. 7 (La. App. 3 Cir. 10/17/18), 259 So.3d 402, 408. In interpreting La. C.C.P. art. 3612, this Court has explained that "[a]lthough the granting of [a] preliminary injunction is an appealable judgment, it does not preclude a litigant's timely and proper resort to our discretionary plenary supervisory power. *See* La. Const. art. V, § 10;[10] La. C.C.P. art. 2201.[11]" *Johnson v. Montero*, 2017-0274, p. 1 (La. App. 4 Cir. 03/29/17), 215 So.3d 479, 481 (quoting *First Bank & Trust v. Duwell*, 2011-0104, p. 2 (La. App. 4 Cir. 5/18/11), 70 So.3d 15, 17, n.5). When "a party elects to seek review by applying for supervisory writs, it must be done within the same time limits allowed for an appeal of the judgment complained of, which is 15 days under [La. C.C.P.] art. 3612." *In re Harrier Trust*, 2018-0667, p. 7, 259 So.3d at 408 (quoting *First Bank & Trust*, 2011-0104, p. 2, 70 So.3d at 17, n.5). Moreover, "review under [an appellate] court's supervisory jurisdiction is appropriate" when "it is probable that by the time any appeal of the preliminary injunction would be completed, the

---

[10] Louisiana Constitution Article V, § 10 provides, in pertinent part, that a court of appeal "has supervisory jurisdiction over cases which arise within its circuit."

[11] Louisiana Code of Civil Procedure Article 2201 states that "[s]upervisory writs may be applied for and granted in accordance with the constitution and rules of the supreme court and other courts exercising appellate jurisdiction."

issues presented therein would be moot." *Id.*, 2018-0667, p. 7, 259 So.3d at 408-09.

We note that, in this matter, the record that would be before us on appeal has been submitted with NOJHFF's Writ Application and Respondents' Oppositions thereto. *See Johnson*, 2017-0274, p. 2, 215 So.3d at 481. Additionally, NOJHFF filed its Writ Application within the fifteen-day time period allowed for taking an appeal of a preliminary injunction. La. C.C.P. art. 3612. Further, given the exigent circumstances posed with Jazz Fest scheduled to commence in less than two weeks, we find that review under this Court's supervisory jurisdiction "is appropriate because the issues will likely be moot by the time any appeal of the preliminary injunction would be completed." *In re Harrier*, 2018-0667, p. 7, 259 So.3d at 408-09. Accordingly, we review this matter under our supervisory jurisdiction and turn to the merits.

## DISCUSSION ON THE MERITS

### *Standard of Review*

An appellate court reviews a trial court's decision on the grant or denial of a preliminary injunction under the abuse of discretion standard of review. Discussing the standard of review, this Court has explained:

> 'A trial court has broad discretion in the granting or denial of a preliminary injunction, and will not be disturbed on review absent clear abuse of that discretion.' *Cajun Elec. Power Co-op., Inc. v. Triton Coal Co.*, [19]91-1816, 590 So. 2d 813, 816 (La. App. 4 Cir. 1991); *Smith v. West Virginia Oil & Gas Co.*, 373 So. 2d 488, 493 (La. 1979). That broad standard is, of course, based upon a conclusion that the trial court committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding that was necessary to the proper exercise of its discretion. *See South East Auto Dealers Rental Ass'n, Inc. v. EZ Rent To Own, Inc.*, [20] 07-0599, pp. 4-5 (La. App. 4 Cir. 2/27/08), 980 So. 2d 89, 93.

8

*Waiters v. deVille*, 2020-0556, p. 8 (La. App. 4 Cir. 12/30/20), ___ So.3d ___, ___, 2020 WL 8455459, at *4 (quoting *Yokum v. Pat O'Brien's Bar, Inc.,* 2012-0217, pp. 6-7 (La. App. 4 Cir. 8/15/12), 99 So.3d 74, 80). *See also Ard v. GrrlSpot, LLC*, 2019-0312, p. 14 (La. App. 4 Cir. 10/23/19), ___ So.3d ___, ___, 2019 WL 5432098, at *6.

***Preliminary Injunction***

"A preliminary injunction is an interlocutory procedural device designed to preserve the existing status quo between the parties, pending trial on the main demand." *Ard*, 2019-0312, p. 14, ___So.3d at ___, 2019 WL 5432098, at *6 (citing *Desire Narcotics Rehab. Inc. v. State Dep't of Health & Hosps.*, 2007-0390, p. 4 (La. App. 4 Cir. 10/17/07), 970 So.2d 17, 20). This Court has explained that the procedural requirements to satisfy "the standard of proof required to meet the elements for a preliminary injunction differ[], contingent upon whether the preliminary injunction sought is a prohibitory injunction or a mandatory injunction." *Id.*, 2019-0312, p. 14, ___ So.3d at ___, 2019 WL 5432098, at *7 (citing *Denta-Max v. Maxicare La., Inc.*, 1995-2128, p. 3 (La. App. 4 Cir. 3/14/96), 671 So.2d 995, 997). A mandatory injunction orders the doing of something, while a prohibitory injunction seeks to restrain conduct. *Id.*, pp. 14-15, ___ So.3d at ___, 2019 WL 5432098, at *7 (citing *Denta-Max*, 1995-2128, p. 2, 671 So.2d at 997; *Yokum*, 2012-0217, p. 9, 99 So.3d at 81). In explaining the different procedural requirements between a mandatory versus a prohibitory injunction, this Court has stated:

> "[A] prohibitory injunction, which simply preserves the status quo until a full trial on the merits, may be issued on a prima facie showing by the party seeking the injunction." [*Denta-Max*, 1995-2128, p. 3, 671 So.2d at 997]. A mandatory injunction, however, has the same basic effect as a permanent injunction, and may not be issued on

9

> merely a prima facie showing that the party seeking the injunction can prove the necessary elements. *Id.* "Instead, the party seeking a mandatory injunction must show by a preponderance of the evidence at an evidentiary hearing that he is entitled to the preliminary injunction. *Id.* (citing *Bollinger Mach. Shop & Shipyard, Inc. v. U.S. Marine, Inc.*, 595 So.2d 756, 759 (La. App. 4th Cir. 1992)).

*Id.*, 2019-0312, p. 15, ___ So.3d at ___, 2019 WL 5432098, at *7 (quoting

*Meredith v. I Am Music, LLC*, 2018-0659, pp. 5-6 (La. App. 4 Cir. 2/13/19), 265

So.3d 1143, 1146). "The issuance of mandatory injunctive relief at a preliminary

injunction hearing, wherein all parties have notice that such relief has been prayed

for and afforded an opportunity to present their case, is proper." *Dore v. Jefferson*

*Guar. Bank*, 543 So.2d 560, 562 (La. App. 4 Cir. 1989) (citing *Kliebert Edu. Trust*

*v. Watson Marine Servs., Inc.*, 454 So.2d 855 (La. App. 5 Cir.1984)). This

procedure for a mandatory injunction has been met if the non-moving party was

served with notice of the preliminary injunction hearing; the non-moving party has

been informed of the moving party's request for mandatory injunctive relief; and

the trial court conducted an evidentiary hearing, at which all parties were present,

represented by counsel, and were afforded the opportunity to present evidence and

cross examine witnesses. *Id.*

Our review of the record reveals that the injunction issued herein is

mandatory because the trial court's April 13, 2022 judgment orders NOJHFF to

give the perquisites to Respondents for the 2022 Jazz Fest. Further, our review

shows that the procedural requirements for a mandatory injunction were satisfied

because NOJHFF had notice of the injunction hearing[12] and was informed in both

---

[12] As discussed, after signing a Rule to Show Cause and setting a hearing date of April 8, 2022, on Ms. Mercadel's Motion for Preliminary Injunction, the trial court rescheduled the hearing to April 13, 2022, in response to NOJHFF filing its Motion to Continue. Considering the foregoing, we find that NOJHFF had notice of the hearing.

the Petitions and the Motions for Preliminary Injunctions that Respondents sought mandatory injunctive relief.[13] Additionally, on April 13, 2022, the trial court held the hearing, at which the parties were present, represented by counsel, and received the opportunity to present evidence and cross-examine witnesses.

Further, to obtain a mandatory preliminary injunction, the moving party must establish by a preponderance of the evidence at an evidentiary hearing that (1) the mover will suffer irreparable injury, loss, or damage if the motion is not granted; (2) the mover is entitled to the relief sought; and (3) the mover will likely prevail on the merits of the case. *ERG Enters., LLC v. Green Coast Enters., LLC*, 2019-1104, p. 10 (La. App. 4 Cir. 5/13/20), 299 So.3d 1194, 1201 (citing *Jarquin v. Blanks*, 2018-0157, p. 3 (La. App. 4 Cir. 8/15/18), 254 So.3d 10, 12). Beginning with the first element, La. C.C.P. art. 3601(A) provides, in pertinent part, that "[a]n injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant . . . " Irreparable injury is "a loss sustained by an injured party which cannot be adequately compensated in money damages or for which such damages cannot be measured by a pecuniary standard." *State ex rel. Dep't of Soc. Servs., Office of Family Support ex rel. Chesser v. Brunnette*, 2003-1965, p. 3 (La. App. 4 Cir. 6/2/04), 876 So.2d 244, 247 (quoting *Terrebonne Par. Police Jury v. Matherne*, 405 So.2d 314, 319 (La. 1981)). "A showing of inconvenience alone is not sufficient to establish irreparable harm." *Horizon River Rests., LLC v. West Centro, LLC*, 2018-0412, p. 6 (La. App. 4 Cir. 1/23/19), 318

---

[13] In their Petitions and in their Motions for Preliminary Injunction, Respondents requested mandatory injunctive relief, i.e., that the trial court order NOJHFF to provide Respondents with the perquisites. Considering the foregoing, we find that NOJHFF was informed that Respondents sought mandatory injunctive relief.

So.3d 848, 853 (citing *Easterling v. Estate of Miller*, 2014-1354, p. 10 (La. App. 4 Cir. 12/23/15), 184 So.3d 222, 228).

Our review of the evidence and testimony reveals that Respondents failed to prove by a preponderance of the evidence that they would suffer irreparable injury if they did not receive injunctive relief. Some of the perquisites, including the free tickets, half-price tickets, ability to purchase posters at a discount, and parking pass, can be adequately compensated in money damages. Although Respondents contend that the other perquisites, namely the laminates, satins, and wristbands, cannot be purchased by the general public and "provide unique access to stage areas and other privileges for viewing the performances," Respondents have not demonstrated anything more than inconvenience. Rather, even without the perquisites, Respondents are still able to park elsewhere, attend Jazz Fest, and view the performances albeit from a different vantage point than they would if they had the perquisites. Thus, we find that this does not rise to the level of irreparable injury as contemplated by La. C.C.P. art. 3601(A) and the jurisprudence interpreting it. *See Dep't of Soc. Servs., Office of Family Support ex rel. Chesser*, 2003-1965, p. 3, 876 So.2d at 247; *Horizon River Rests., LLC*, 2018-0412, p. 6, 318 So.3d at 853. Because Respondents failed to prove irreparable injury by a preponderance of the evidence, we conclude that the trial court abused its discretion in granting Respondents' Motions for Preliminary Injunction and pretermit discussion of the remaining elements for obtaining a mandatory preliminary injunction.

## DECREE

For the foregoing reasons, we grant the writ and reverse the trial court's April 13, 2022 judgment, which granted Respondents' Applications/Motions for Preliminary Injunction.

**WRIT GRANTED; JUDGMENT REVERSED**